**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| Mark Satterly, Matthew Godsey, and Josh Wagler,<br><br>        On behalf of themselves and other members of the general public similarly situated,<br><br>                              Plaintiffs,<br>v.<br><br>Airstream, Inc.,<br>                              Defendant. | * <br> * <br> * <br> * <br> * <br> * <br> * <br> * | Case No. 3:19-cv-32<br><br>Judge Walter H. Rice |
| Matthew Godsey, Josh Wagler, & Jasson Dunaway,<br><br>        On behalf of themselves and other members of the general public similarly situated,<br><br>                              Plaintiffs,<br>v.<br><br>Airstream, Inc.,<br>                              Defendant. | * <br> * <br> * <br> * <br> * <br> * <br> * | Case No. 3:19-cv-107<br><br>Judge Walter H. Rice |

## <u>THE PARTIES' JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS</u>

Named Plaintiffs Mark Satterly ("Named Plaintiff Satterly" or "Satterly") Matthew Godsey ("Named Plaintiff Godsey" or "Godsey"), Josh Wagler ("Named Plaintiff Wagler" or "Wagler"), Jasson Dunaway ("Named Plaintiff Dunaway" or "Dunaway") (collectively "Named Plaintiffs" or "Representative Plaintiffs") and Defendant Airstream, Inc. ("Airstream" or "Defendant") (Plaintiffs and Defendant collectively hereinafter the "Parties"), by and through undersigned

counsel, hereby jointly move the Court for entry of an order (1) preliminarily approving a class action settlement pursuant to Fed. R. Civ. P. 23(e) and a collective action settlement pursuant to the Fair Labor Standards Act, 29 U.S.C. § 216(b); (2) preliminarily certifying Plaintiffs' claims (in both consolidated cases) under the Ohio Minimum Fair Wage Standards Act, O.R.C. 4111.01, *et seq.*, 4111.08 ("the Ohio Wage Act"); and the Ohio Prompt Pay Act ("OPPA"), Ohio Rev. Code § 4113.15 (the Ohio Wage Act and the OPPA will be referred to collectively as "the Ohio Acts"), as a settlement class under Fed. R. Civ. P. 23; (3) appointing Plaintiffs' counsel as class counsel pursuant to Fed. R. Civ. P. 23(g); (4) appointing Analytics, LLC as the claims administrator; (5) approving the form, content, and manner of notice to the proposed settlement class; and (6) scheduling a final approval hearing.

As explained in the accompanying memorandum of law, the Parties have reached a settlement in which Airstream will make payments to current or former employees (the "Settlement"). In addition to the 4 Named Plaintiffs (Mark Satterly, Matt Godsey, Josh Wagler, and Jasson Dunaway), 20 Opt-In Plaintiffs have already joined this action and will be included in the settlement (Named Plaintiffs and Opt-In Plaintiffs are collectively referred to as "Plaintiffs"). The settlement class will include all Plaintiffs as well as 1,027 current and former employees of Airstream who were employed at Airstream at any time between February 1, 2016 and January 1, 2020.

The Parties also jointly request that the Court preliminarily certify a Fed. R. Civ. P. 23 class consisting of all class members solely for purposes of settlement. To that end, the Parties agree that the numerosity, commonality, typicality, and adequacy requirements of Fed. R. Civ. P. 23(a) are satisfied and that the class claims meet the requirements of Fed. R. Civ. P. 23(b)(3). The Parties further agree that Plaintiffs' counsel should be appointed as class counsel pursuant to Fed.

R. Civ. P. 23(g) and that Analytics, LLC should be appointed as the claims administrator for purposes of administering the settlement. Finally, the Parties agree that the proposed form, content, and manner of notice to the settlement classes is reasonably calculated to give adequate notice of the settlement and an opportunity to object to it or opt out of it.

WHEREFORE, for the reasons set forth above and in the memorandum of law in support of this motion, the Parties jointly request that the Court enter an order:

1.   Approving the Settlement as fair, reasonable, and adequate under 29 U.S.C. § 216(b);

2.   Preliminarily approving the Settlement as fair, reasonable, and adequate under Fed. R. Civ. P. 23(e);

2.   Granting certification pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3) of a settlement class as defined by the Parties in the accompanying memorandum;

3.   Appointing Matthew J.P. Coffman of Coffman Legal, LLC and Daniel I. Bryant of Bryant Legal, LLC as class counsel pursuant to Fed. R. Civ. P. 23(g);

4.   Appointing Analytics, LLC as the claims administrator for purposes of administering the settlement;

5.   Approving the form, content, and manner of the notices to the proposed Settlement Classes; and

6.   Setting a final approval hearing on a schedule consistent with the Parties' Settlement Agreement and the Court's calendar.

Respectfully Submitted,

**COFFMAN LEGAL, LLC**

*/s/ Matthew J.P. Coffman*
Matthew J.P. Coffman (0085586)
1550 Old Henderson Road
Suite 126
Columbus, Ohio 43220
Phone: 614-949-1181
Fax: 614-386-9964
Email: mcoffman@mcoffmanlegal.com

**BRYANT LEGAL, LLC**

*/s/ Daniel I. Bryant*
Daniel I. Bryant (0090859)
1550 Old Henderson Road
Suite 126
Columbus, Ohio 43220
Phone: 614-704-0546
Fax: 614-573-9826
Email: dbryant@bryantlegalllc.com

*Attorneys for Named Plaintiffs and those
similarly situated*

DINSMORE & SHOHL, LLP

*/s/ Karen S. Hockstad*
Karen S. Hockstad (0061308)
Glen R. McMurry (0082600)
Andrew S. Good (008653)
karen.hockstad@dinsmore.com
glen.mcmurry@dinsmore.com
andrew.good@dinsmore.com
191 W. Nationwide Blvd., Suite 300
Columbus, Ohio 43215
P. 614.628.6880
F. 614.628.6890

*Attorneys for Defendant Airstream, Inc.*

## MEMORANDUM IN SUPPORT

### I.    INTRODUCTION

The Parties' Motion for Preliminary Approval of Class and Collective Action Settlement and Certification of Settlement Class contemplates the settlement of two collective and class action lawsuits against Airstream as explained below.

### A.  The *Satterly* Lawsuit (Case No. 3:19-cv-32) (hereinafter the "*Satterly* Lawsuit")

Named Plaintiff Mark Satterly ("Named Plaintiff" or "Satterly"), on behalf of himself and those similarly situated, filed his Collective and Class Action Complaint on January 31, 2019 against Airstream, Inc ("Defendant" or "Airstream") and alleged that Airstream failed to fully pay employees overtime wages seeking all available relief under the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, the Ohio Minimum Fair Wage Standards Act, O.R.C. 4111.03, and 4111.08 ("the Ohio Wage Act"); and the Ohio Prompt Pay Act ("OPPA"), Ohio Rev. Code § 4113.15 (the Ohio Wage Act and the OPPA will be referred to collectively as "the Ohio Acts"). (*See* ECF No. 1, PAGEID # 2-7) Thereafter, Named Plaintiffs Satterly, Matt Godsey ("Godsey"), and Josh Wagler ("Wagler") (collectively, the "*Satterly* Named Plaintiffs") filed their first amended collective and class action complaint on March 4, 2019. (*See* ECF No. 17)

In addition to the *Satterly* Named Plaintiffs, 20 Opt-In Plaintiffs[1] have elected to join case ("Opt-In Plaintiffs"):  Sandra Funk, Chad Cisco, Christopher Compton (all three consent forms contained in ECF No. 2-1), Sandra Burke/Strong (ECF No. 3-1), Brandon Van Horn, Brittany Walker, Chris Frye, Daniel Sprague (all four contained in ECF No. 4-1), Timothy Tilton (ECF No. 6-1), Chad Brandyberry, Jason Myers (both contained in ECF No. 9-1), Jimmie Aldrich (ECF No. 11-1), Barry Arnold (ECF No. 12-1), DeAndre Barnes (ECF No. 14-1), Marcus Tyler Ratliff (ECF

---

[1] Jasson Dunaway also opted into the *Satterly* Lawsuit, but he is a named plaintiff in the Godsey Lawsuit, so he will be referred to as a named plaintiff following the background.

No. 16-1), Robert Brown Jr. (ECF No. 18-1), Steve Yahl (ECF No. 20-1), Jordan Dunaway (ECF No. 29-1), Robert Howard (ECF No. 40-1), and Mindy Finn (ECF No. 67-1) (the *Satterly* Named Plaintiff and Opt-In Plaintiffs collectively hereinafter "Plaintiffs").

The *Satterly* Named Plaintiffs' First Amended Complaint alleges that Airstream maintains a Pay-to-Shift/Wage Theft Policy that generally only pays its employees for their *scheduled* shift instead of the *actual* amount of time they are on Airstream's premises clocked in and working, resulting in unpaid overtime wages. The *Satterly* Lawsuit claims are asserted under both the FLSA and Ohio law on behalf of themselves and similarly-situated hourly, non-exempt employees. (*See Satterly* Plaintiffs' Complaints, ECF Nos. 1 and 17 (Counts 1-3)). Airstream denies these claims and states that it paid its employees in accordance with state and federal guidelines.

**B. The *Godsey* Lawsuit (Case No. 3:19-cv-107 (hereinafter the "*Godsey* Lawsuit")**

On April 11, 2019, Godsey, Wagler, and Jasson Dunaway ("Dunaway") (collectively, the "*Godsey* Plaintiffs") filed their Collective and Class Action Complaint brought under the FLSA and Ohio law and alleged that Airstream failed to fully pay Named Plaintiffs and similarly situated individuals for all overtime wages earned at the rate of one-and-one-half times their respective <u>correct</u> regular rates of pay. The alleged violations purportedly occurred when the *Godsey* Plaintiffs and those similarly situated individuals received remuneration in addition to their base hourly pay, such as attendance and AIRPOOL production bonuses.[2]   Airstream denies that any monies are due and owing its employees for violations set forth in *Godsey*.

---

[2] *See* ECF No. 1, PAGEID # 4-5, ¶ 20, PAGEID # 7-8.

## II.     RELEVANT PROCEDURAL POSTURE AND FACTUAL BACKGROUND AS TO THE AIRSTREAM LITIGATION

The Parties engaged in significant disputes in both the *Satterly* Lawsuit and the *Godsey* Lawsuit. Although collective actions were conditionally certified in both cases, notice has not been issued in either case because of additional motions filed by the Parties.

### A.  Settlement Negotiations for the *Satterly* and *Godsey* Lawsuits

On October 7, 2019, the Court, upon a joint request from the Parties, stayed the *Satterly* and *Godsey* Lawsuits pending mediation. (*Satterly* Lawsuit, ECF No. 112) Thereafter, the Parties engaged in a comprehensive exchange of information regarding Plaintiffs' claims and Defendant's defenses to such claims, including payroll data for all putative collective and class members. (Coffman Dec. ¶ 18; Bryant Dec. ¶ 16) In addition, Plaintiffs' Counsel thoroughly investigated, researched, and assessed the claims in controversy, Airstream's defenses, and the relevant statutes, regulations, and federal jurisprudence. (*Id.*)

On January 17, 2020, the Parties participated in a full-day mediation in person before Chief Magistrate Judge Elizabeth P. Deavers in the U.S. District Court for the Southern District of Ohio, Eastern Division. However, a resolution could not be reached between the Parties. (Exhibit B, Coffman Dec. ¶ 19; Exhibit C, Bryant Dec. ¶ 17) Between February 10, 2020 and March 5, 2020, the Parties devoted significant efforts toward continued settlement communication. On March 16, 2020, the Parties reached a settlement in principle.

The Parties reached a settlement of the Airstream litigation upon stated terms and conditions, which are set forth in this Settlement Agreement (Exhibit A) that resolves all claims asserted in the lawsuit. (Ex. B, Coffman Dec. ¶ 20; Ex. C, Bryant Dec. ¶ 18). Based on their extensive investigation, Plaintiffs' Counsel is of the opinion that the terms set forth in the Settlement Agreement are fair, reasonable, adequate, and in the best interests of the class and

collective in light of the risk of significant delay, costs and uncertainty associated with litigation, including Airstream's defenses. (Ex. B, Coffman Dec. ¶ 20; Ex. C, Bryant Dec. ¶ 18).

### B. The *Satterly* and *Godsey* Lawsuits were Consolidated.

The Parties requested that the *Satterly* and *Godsey* Lawsuits be consolidated for settlement purposes. The Court approved such request and entered an order consolidating the cases (*Satterly* Lawsuit, ECF No. 130). (hereinafter, the Lawsuits will be collectively referred to as the "Litigation").

### C. Terms of the Settlement Agreement (the "Settlement Agreement")

The Settlement Agreement provides substantial relief for Airstream's hourly, non-exempt employees, including the 24 Plaintiffs who have already joined the Litigation.

The Settlement Agreement provides that Airstream, without conceding the validity of Plaintiffs' claims and without admitting liability, will create a total settlement fund of $1,200,000.00 ("Settlement Fund") to resolve the Litigation. (Ex. B, Coffman Dec. ¶ 22; Ex. C, Bryant Dec. ¶ 20). The Parties agree that a settlement class should be certified as a Rule 23 class, as defined below

> All current and former hourly, non-exempt associates of Airstream who: (1) worked at least forty (40) hours in any workweek; and (2) "clock in" or "clock out" to keep track of their compensable hours worked, during any workweek from February 1, 2016 until January 1, 2020.   (the "Settlement Class")

The Settlement Fund will provide Settlement Class members with their pro rata share of damages resulting from Plaintiffs' claims made in the Litigation, including unpaid pre-shift and post-shift work as well as the failure to pay overtime at the correct rate of pay when additional remuneration is earned. The Settlement Fund represents approximately 40% of the maximum unliquidated overtime damages calculated by Class Counsel. Defendant disputes the maximum

alleged overtime damages calculated by Class Counsel and instead believes that the total settlement fund exceeds the maximum recoverable damages in the Litigation. Although 12 of the settlement payments will be less than $5 due to the pro rata share (based on the number of alleged unpaid overtime hours worked and length of employment), the remaining 1,038 settlement payments exceed this amount with the highest payment in excess of $4,300. (Ex. B, Coffman Dec. ¶ 23; Ex. C, Bryant Dec. ¶ 21).

In addition, the Settlement Agreement provides for modest collective and class representative enhancement payments to the Named Plaintiffs and Opt-In Plaintiff Jason Myers (collectively, "Representative Plaintiffs") for their efforts assisting Plaintiffs' counsel with the litigation (hereinafter "Service Enhancement Payments"). Specifically, the Representative Plaintiffs will receive Service Enhancement Payments in the corresponding amounts: (1) Matthew Godsey: $15,000; (2) Mark Satterly: $12,500; (3) Jasson Dunaway: $10,000; (4) Josh Wagler: $10,000; and (5) Opt-In Plaintiff Myers: $2,500. Each of these individuals have assisted in the prosecution of the Airstream Overtime Litigation by doing one or more of the following: (1) providing extensive factual information to Plaintiffs' counsel; (2) faithfully communicating with Plaintiffs' counsel; (3) subjecting themselves to the responsibilities of serving as Representative Plaintiffs; (4) responding to written discovery; (5) testifying at hearings; (6) attending the mediation; (7) providing sworn statements; and/or (8) otherwise providing material information to Plaintiffs' counsel above and beyond normal course. (Ex. A, Settlement Agreement ¶ 23-27; Ex. B, Coffman Dec. ¶ 24-25; Ex. C, Bryant Dec., ¶ 22-23)

As for attorney's fees and costs, Plaintiffs request attorney's fees in the amount of 1/3 of the total common fund of $1,200,000, or $400,000 ("Class Counsel Award"), which Airstream has agreed it will not oppose. (Ex. A, Settlement Agreement ¶ 23-28; Ex. B, Coffman Dec. ¶ 27; Ex.

C, Bryant Dec. ¶ 25). The Class Counsel Award will be approved by the Court in its final order approving the settlement. (Ex. A, Settlement Agreement, ¶ 29). Plaintiffs' costs associated with the prosecution of the Litigation will be paid after deducting 1/3 of the Settlement Fund for attorney's fees and will be made in addition to the Class Counsel Award. (*Id*. at ¶ 28) Moreover, Airstream has agreed to directly pay Analytics, LLC ("Claims Administrator"), the third-party claims administrator, costs associated with distribution of the settlement payments up to $15,000. (*Id*. at ¶ 23)

Finally, Airstream has agreed to certain non-monetary benefits, as follows: (1) effective August 10, 2019, Airstream changed its timekeeping system to prevent pre-shift clock-ins more than 15 minutes before the shift and post-shift rounding in accordance with state and federal regulations.; and (2) it has agreed to distribute communication to its Associates concerning the Settlement Agreement (attached as Exhibit 3 to the Settlement Agreement). (Ex. B, Coffman Dec. ¶ 26; Ex. C, Bryant Dec. ¶ 24)

### D. **Notice Procedure**

The Settlement Agreement provides for notice to be issued to the Settlement Class (Ex. A, Settlement Agreement, ¶ 29-31). The Notice of Collective and Class Action Lawsuit Settlement is attached as Exhibit 4 ("Settlement Notice"). The Settlement Notice shall inform the Settlement Class members of the pendency of this lawsuit; the terms of the proposed settlement; the amount of their individual settlement payments; their right to opt out of the settlement or object to it; and the date of the Final Approval Hearing. (*Id*.). Within 24 days after entry of an order approving the notices, the Claims Administrator shall mail the Settlement Notice, as approved by the Court, by First Class U.S. Mail to the putative members of the settlement class. (¶ 30-36). Following the

10

mailing of the notices, the putative members of the Settlement Class will have 45 days from the date of mailing to submit any objections to the settlement or to opt out of the settlement. (*Id.*).

The Parties will file a motion for final approval within 14 days after the close of the opt-out and objection periods. The Parties request that the Court schedule a Final Approval Hearing 21 days after the close of the opt-out and objection periods. (Ex. A, Settlement Agreement, ¶ 33) If the Court grants final approval, the claims of all Settlement Class members who did not opt out of the lawsuit will be dismissed with prejudice, the Settlement Class members will release the wage and hour claims described below, and they will be mailed their proportionate share of the Settlement Fund by the Claims Administrator. (*Id.* at ¶ 36-7). The Settlement Class members who do not opt out of the Settlement will release Airstream from all federal and state wage-and-hour claims, rights, demands, liabilities, and causes of action of every nature and description, including but not limited to those claims for unpaid wages, unpaid overtime compensation, liquidated damages, interest, attorneys' fees and expenses alleged in the Litigation, whether known or unknown, pursuant to the FLSA, the Ohio Minimum Fair Wage Standards Act O.R.C. 4111.03-4111.08; and the Ohio Prompt Pay Act, O.R.C. 4113.15 ("Ohio Wage Claims") for the Released Period. (*Id.* at ¶ 7 and 36-37)

Further, any settlement class member who does not opt out of the Settlement will be deemed to have affirmatively opted into the lawsuit under the FLSA, 29 U.S.C. § 216(b). (Ex. A, Settlement Agreement, ¶ 36-37).  The Settlement Class members who do not opt out of the settlement will be issued individual settlement payments by the Claims Administrator in the form of a "Settlement Check." (*Id.*).

### III.    LAW AND ARGUMENT

Insofar as the Settlement Agreement proposes to settle claims brought under the Ohio Acts and FLSA as agreed to between the parties, the settlement is subject to approval by the Court under Fed. R. Civ. P. 23(e) and 29 U.S.C. § 216(b).  As explained below, approval is warranted under both provisions.

### A.    Preliminary Approval of the Settlement Under Rule 23(a) and (b) is Appropriate

### 1.    Certification of the Settlement Class is Appropriate

A proposed settlement class must satisfy the requirements of Fed. R. Civ. P. 23. *UAW v. General Motors Corp.*, 497 F.3d 615, 626 (6th Cir. 2007), citing, *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).  The proposed Settlement Class satisfies those requirements.

The proposed Rule 23 Settlement Class meets the requirements of numerosity, commonality, typicality, and adequacy of representation set forth in Fed. R. Civ. P. 23(a). *Senter v. General Motors Corp., 532 F.2d 511* (6th Cir.), cert. denied, 429 U.S. 870 (1976); *UAW v. General Motors Corp.*, 497 F.3d at 626.   The proposed Settlement Class, consisting of approximately 1026 members, is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a).

The Plaintiffs assert that there are questions of law or fact that are common to the Settlement Class. The consolidated claims of the Plaintiffs are typical of a Rule 23 settlement class. The Representative Plaintiffs are adequate representatives given that they have common interests with the Settlement Class members. *Rutherford v. City of Cleveland*, 137 F.3d 905 (6th Cir. 1998).

The Settlement Class further satisfies Rule 23(b)(3)'s requirements of predominance and superiority for settlement purposes. *Senter*, 532 F.2d at 522; UAW, 497 F.3d at 626.  The issues presented are based on alleged uniform policies and practices that apply to all members of the

12

Settlement Class. The common issues predominate over questions affecting all members of the Settlement Class. Representative Plaintiffs allege that these practices apply to all members of the Settlement Class, making questions of law and fact that are common to the members of the Settlement Class predominate over individualized issues.

In addition, class-wide resolution of this controversy is superior to the alternative of litigating over 1,027 individual suits. *General Tel. Co. v. Falcon*, 457 U.S. 147, 159 (1982)(class certification advances "the efficiency and economy of litigation which is a principal purpose of the procedure"); *Day v. NLO*, 851 F.Supp. 869, 883 (S.D. Ohio 1994)(of equal importance "are considerations of the avoidance of the inequality resulting from piecemeal litigation as well as a concern to provide access to the courts for litigants with limited resources and common claims")

### 2.  The Proposed Notice Satisfy Rule 23 and Due Process

Federal Rule of Civil Procedure 23(e) requires the Court to "direct notice in a reasonable manner to all class members who would be bound" by the settlement. *Bailey v. White*, 320 Fed.Appx. 364 (6th Cir. 2009).  The notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *UAW,* 497 F.3d at 626, *citing*, *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950).

Reasonable notice to Settlement Class members is required by due process as well. *Fidel v. Farley*, 534 F.3d 508, 513 (6th Cir. 2008), *citing*, *DeJulius v. New England Health Care Employees Pension Fund,* 429 F.3d 935, 943-944 (10th Cir.2005); *Mullane,* 339 U.S. at 313; *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 173 (1974).  Due process "does not, however, require *actual* notice to each party intended to be bound by the adjudication of a representative action." *Fidel*, 534 F.3d at 514 (6th Cir. 2008), *citing*, *DeJulius,* 429 F.3d at 944; *Mullane,* 339 U.S. at 313-14;

*In re Integra Realty Res., Inc.,* 262 F.3d 1089, 1110-1111 (10th Cir. 2001); *Silber v. Mabon,* 18 F.3d 1449, 1453-54 (9th Cir.1994).  The issue is not whether all class members received notice, "but whether the class as a whole had notice adequate to flush out whatever objections might reasonably be raised to the settlement." *Fidel,* 534 F.3d at 514, *quoting*, *Torrisi v. Tucson Elec. Power Co.,* 8 F.3d 1370, 1375 (9th Cir. 1993).

The "individual notice" requirement of Rule 23(e) and due process is fulfilled by sending written notice to class members by first-class mail, at the addresses shown in the defendant's business records. *Grunin v. International House of Pancakes,* 513 F.2d 114, 120 (8th Cir. 1975), *cert. denied*, 423 U.S. 864 (1975).  Such notice is the "best notice practicable" in a class action. *Grunin*, 513 F.2d at 121; *Eisen*, 417 U.S. at 175.

In the present case, the proposed Notice satisfies these requirements.  Under the terms of the Settlement Agreement, the notice will be sent to the Settlement Class members by first-class mail using the addresses shown in Airstream's records within 24 days of a preliminary approval order. (Ex. A, Settlement Agreement, ¶ 29) The notice informs the Settlement Class members of the claims asserted in the lawsuit, explains the structure of the Settlement, sets forth each individual's anticipated individual settlement payment, and provides them with the ability to seek more information and copies of the settlement documents from the Claims Administrator or Class Counsel. (*See* Exhibit 4 to Settlement Agreement) The Notice also informs the Settlement Class members of their rights to opt out of the Settlement or object to it and provide them with an opportunity to do so within 45 days of the mailing of the notice.  Any notices returned to the claims administrator as undeliverable will be skip traced once to obtain a new address to which they shall be re-mailed. (*Id*.) This process is reasonably calculated to apprise the Settlement Class members of the pendency of the settlement and afford them an opportunity to present their objections or opt

14

out of the settlement. *See Mitchell v. Independent Home Care, Inc.*, No. 2:17-cv-717, ECF Nos. 40, PAGEID # 377-78 (S.D. Ohio Feb. 20, 2019) (Vascura, M.J.) and ECF No. 41 (S.D. Ohio Mar. 12, 2019) (Watson, J.) (approving R&R)

### B. **Preliminary Approval of the Settlement Under Rule 23(e) is Appropriate.**

Under Federal Rule of Civil Procedure 23(e), a class settlement must be "fair, reasonable, and adequate" under a seven-factor standard discussed below. *UAW v. General Motors Corp.,* 497 F.3d 615, 626, *citing*, *Granada Invs., Inc. v. DWG Corp.,* 962 F.2d 1203, 1205 (6th Cir.1992); *Williams v. Vukovich,* 720 F.2d 909, 922-923 (6th Cir.1983). The Sixth Circuit has recognized that "the law generally favors and encourages the settlement of class actions." *Franks v. Kroger Co.*, 649 F.2d 1216, 1224 (6th Cir. 1981). Such actions, by their nature, involve uncertainties of outcome, difficulties of proof, and lengthy litigation, and they readily lend themselves to compromise. 4 Newberg On Class Actions §11.41 (4th ed. 2007). Therefore, when considering the seven factors, the courts apply a "strong presumption" in favor of finding a settlement to be fair. *Dail v. George A. Arab, Inc.,* 391 F.Supp.2d 1142, 1145-1146 (M.D. Fla. 2005), *citing*, *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977); *Sweet v. General Tire & Rubber Co.*, 1982 WL 278, *5 (N.D. Ohio Mar. 17, 1982).

### 1. The Seven-Factor Standard Is Satisfied

The Sixth Circuit uses seven factors to evaluate class action settlements:

(1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*UAW*, 497 F.3d at 626. And, unlike Rule 23 class certification for purposes of litigation, certification of a Rule 23 class solely for the purposes of settlement does not require the court to engage in an analysis of manageability. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, syl.

2(b), 620 (1997)("whether trial would present intractable management problems . . . is not a consideration when settlement-only certification is requested, for the proposal is that there be no trial"). As explained below, the seven-factor standard supports approval of the settlement in this case.

### a. *No Indicia of Fraud or Collusion Exists*

The Parties reached a settlement in this case following contentious litigation, extensive review and computation of damages, and prolonged settlement negotiations over several months. As such, there is no indicia of fraud or collusion.

### b. *The Complexity, Expense, and Likely Duration of Continued Litigation Favor Approval*

The policy favoring the settlement of class actions and other complex cases applies with particular force here. As this Court observed, "the Court notes that wage and hour class and collective actions, such as this, are inherently complex and time-consuming." *Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-CV-516, 2019 WL 6310376, at *3 (S.D. Ohio Nov. 25, 2019) (Rice, J.).

As this Court is aware, the Airstream Overtime Litigation is inherently complex because it involves claims of unpaid overtime due to (1) a Pay-to-Shift policy/practice and/or rounding of time; and (2) regular rate issues involving Additional Remuneration. Virtually every issue in the Airstream Overtime Litigation was contested and the Parties vigorously advocated for their respective positions.

In addition, the Parties disagree as to whether the two-year limitations period for non-willful violations or a three-year limitations period for willful violations applies. Defendant claims that even if the Plaintiffs succeed on the merits (even though Defendant contends Plaintiffs will not be successful), they cannot prove a willful violation of the law, and thus, only a two-year

limitations period would apply.  Further, Defendant asserts that, because it acted in good faith, no liquidated damages should be awarded even if the Plaintiffs prevail on their claims.

Thus, if forced to litigate this case further, the Parties would engage in complex, costly, and protracted litigation.  The settlement, on the other hand, provides substantial relief to the Plaintiffs and the settlement class promptly and efficiently, and amplifies the benefits of that relief through the economies of class-wide resolution. Accordingly, the litigation was difficult and complex and weighs in favor of the settlement.

### c. *The Parties Sufficiently Investigated the Claims and Defenses Asserted.*

The Parties engaged in substantial investigation prior to commencing and throughout the Airstream Overtime Litigation prior to negotiating a potential resolution. The Parties exchanged written discovery and relevant information, including detailed payroll information and other business records of Airstream. In addition, Class Counsel engaged in further independent investigation of the facts, reviewed pay data, confirmed damages calculations with a third-party expert, and conducted additional legal research regarding the claims and defenses in the lawsuits. Thus, the legal issues were thoroughly researched by the Parties and the value of the claims properly assessed.

### d. *The Likelihood of Success on the Merits, as well as the Risks of Litigation and Uncertainty of Recovery, Favor Approval.*

Counsel for both sides believe in the merits of their clients' positions and have vigorously represented their clients' interests throughout the Litigation, but nonetheless recognize that litigation is uncertain in terms of duration, cost, and result. For example, the settlement provides relief to the settlement class members and eliminates the risks that the Parties would otherwise bear if the litigation were to continue on for more years, which favors this factor. *See Barnes v.*

*Winking Lizard, Inc.*, No. 1:18CV952, 2019 WL 1614822, at *3 (N.D. Ohio Mar. 26, 2019) (citing *Foster v. Nationwide Mut. Ins. Co.*, 710 F.3d 640 (6th Cir. 2013) (affirming bench trial verdict that special investigators were properly classified as exempt from the overtime pay requirements of the FLSA); *Henry v. Quicken Loans, Inc.*, 698 F.3d 897 (6th Cir. 2012) (affirming a jury verdict, reached after eight years of litigation, that mortgage bankers were properly classified as exempt from the overtime pay requirements of the FLSA).

Absent settlement, the Parties would have engaged in significant discovery, including, but not limited to responses to discovery requests of many, if not all of the Opt-In Plaintiffs, many depositions, discovery-related motion practice, further testimony at any additional hearings, and other motion practice (Rule 23 class certification, FLSA collective decertification, dispositive motions on the merits and damages issues). Further, even if they prevail on the merits, any recovery could be significantly curtailed if a jury concludes that Airstream acted in good faith and Representative Plaintiffs fail to establish a willful violation of the law. Moreover, an appeal could be filed.

On the other hand, Defendant faces the prospect of class-wide liability to 1,027 current and former employees, as well as liquidated damages and attorney's fees following lengthy and expensive litigation. These considerations all support approval of the settlement. Indeed, by agreeing to the settlement, these risks are eliminated, and participating class members are guaranteed to receive an excellent recovery now, rather than possibly receiving a recovery years from now (or not receiving any recovery ever). *Barnes*, 2019 WL 1614822, at *3; *See also Hall v. U.S. Cargo and Courier Service, LLC*, 2019 WL 6001198 at *4 (S.D. Ohio Nov. 14, 2019) (Sargus, J) (denying defendant's request for costs following a jury trial in a FLSA collective action).

### e. *The Opinions of Class Counsel and Representative Plaintiffs Favor Approval*

The Parties' counsel are experienced in wage-and-hour class and collective actions, have acted in good faith, and have represented their clients' best interests in reaching this Settlement. And, for the reasons set forth above, Class Counsel is of the opinion that the Settlement is a fair, reasonable, and adequate resolution of this Litigation. Likewise, Representative Plaintiffs agree that the settlement is fair and reasonable, and they assent to the terms of the Settlement.

### f. *The Reaction of Absent Class Members Will Likely Favor Approval.*

Absent class members will not be informed of the Settlement until notice is authorized by the Court. Based on the terms of the Settlement and input of the Representative Plaintiffs, however, it is anticipated that their reaction will be positive. The Settlement Class members will receive substantial relief as a result of the settlement, including monetary relief by way of settlement payments as well as the change in the practice that will provide additional prospective relief.

### g. *The Public Interest Favors Approval*

Approval of a fair and reasonable agreement promotes the public's interest in encouraging settlement of litigation. *Edwards v. City of Mansfield*, 2016 U.S. Dist. LEXIS 64159, *10 (N.D. Ohio May 16, 2016); *Williams v. K&K Assisted Living LLC*, 2016 U.S. Dist. LEXIS 9310, *3 (E.D. Mich. Jan. 27, 2016) (district courts may approve FLSA settlements "in order to promote the policy of encouraging settlement of litigation"), quoting, *Lynn's Food Stores, Inc. v. U.S. By & Through U.S. Dep't of Labor, Employment Standards Admin., Wage & Hour Div.*, 679 F.2d 1350, 1354 (11th Cir. 1992). Settlement agreements assure that plaintiffs will receive compensation for the alleged violations at issue. As one district court in this Circuit explained,

"the certainty and finality that comes with settlement also weighs in favor of approving a fair and reasonable settlement." *Edwards*, 2016 U.S. Dist. LEXIS 64159 at *10.

The same is true here. The Settlement promotes public interest by providing fair and efficient payments to the Settlement Class members, avoiding the continued expenditure of judicial resources on protracted complex litigation, and eliminating the risks that both parties face through the litigation process.

### 2. The Settlement Distributions are Fair, Reasonable, and Adequate.

As part of the scrutiny it applies to a class and collective action settlement, "a court must ensure that the distribution of the settlement proceeds is equitable." *Crawford v. Lexington-Fayette Urban County Government*, 2008 WL 4724499, *9 (E.D. Ky. Oct. 23, 2008), *citing*, *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 855 (1999). In the present case, the settlement establishes a pool of Settlement funds that will be divided among the Settlement Class members who do not opt out of the settlement on a pro rata basis based upon their calculated damages. This ensures an equitable distribution of settlement proceeds that is directly tied to the claims of and harm allegedly suffered by the settlement class members and will provide them with a proportionate share of the settlement funds.

### a. The Individual Payments are Reasonable and Adequate.

With respect to the settlement payments to the Settlement Class members, the individual payments are reasonable. The total Settlement Fund represents approximately 40% of the maximum unliquidated overtime damages calculated by Class Counsel. Defendant disputes the maximum alleged overtime damages calculated by Class Counsel and instead believes that the total settlement fund exceeds the maximum recoverable damages in Litigation. Although 12 of the settlement payments will be less than $5, the remaining 1,038 settlement payments exceed this

amount with the highest payment in excess of $4,300.  (Ex. B, Coffman Dec. ¶ 23); (Ex. C, Bryant Dec. ¶ 21).  The Settlement Fund and individual settlement payments represent a reasonable and adequate resolution of the settlement class members' overtime claims.

### b.  *Representative Plaintiffs' Service Awards are Reasonable.*

Service awards to representative plaintiffs recognizing the value of their services on behalf of other participants are proper. The Sixth Circuit declared that "numerous courts have authorized incentive awards [as] efficacious ways of encouraging members of a class to become class representatives and rewarding individual efforts taken on behalf of the class." *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003); *accord Osman v. Grube, Inc.*, No. 3:16-cv-00802-JJH, 2018 U.S. Dist. LEXIS 78222, at *4-5 (N.D. Ohio May 4, 2018). As stated in *In re Dunn & Bradstreet Credit Services Customer Litigation*, 130 F.R.D. 366, 373-74 (S.D. Ohio 1990):

> Numerous courts have not hesitated to grant incentive awards to representative plaintiffs who have been able to effect substantial relief for classes they represent. 130 F.R.D. at 373 (citing *Wolfson v. Riley*, 94 F.R.D. 243 (N.D. Ohio 1981); *Bogosian v. Gulf Oil Corp.*, 621 F. Supp. 27, 32 (E.D. Pa. 1985); *In re Minolta Camera Products Antitrust Litigation*, 666 F. Supp. 750, 752 (D. Md. 1987)).

In this Circuit, service awards to representative plaintiffs are "typically justified when named plaintiffs expend more time and effort beyond that of other class members in assisting class counsel with litigation, such as by actively reviewing the case and advising counsel in prosecution of case."  *In re Southern Ohio Correctional Facility*, 175 F.R.D. 270, 273-76 (S.D. Ohio 1997). Courts recognize that "differentiation among class representatives based upon the role each played may be proper in given circumstances." *Dun & Bradstreet*, 130 F.R.D. at 374, citing, *In re Jackson Lockdown/MCO Cases*, 107 F.R.D. 703, 710 (E.D. Mich. 1985), *see also*, *Enterprise Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 250 (S.D. Ohio 1991)(among the factors warranting incentive awards are the "time and effort spent" by the individuals in question and

"whether these actions resulted in a substantial benefit to Class Members"). As this Court recently echoed, such awards are common in class action settlement and routinely approved for the simple reason: "to compensate [plaintiffs] for the services they provided and the risks they incurred during the course of the class action litigation." *Kritzer v. Safelite Solutions, LLC*, No. 2:10-cv-0729, 2012 WL 1945144 at *8-9 (S.D. Ohio May 30, 2012).

In the present case, Representative Plaintiffs' roles in the Litigation were crucial and the requested payment amounts are reflective of their respective contributions. Representative Plaintiffs assisted in the Litigation by doing some or all of the following: (1) providing extensive factual information to Plaintiffs' counsel; (2) faithfully communicating with Plaintiffs' counsel; (3) subjecting themselves to the responsibilities of serving as Representative Plaintiffs; (4) responding to written discovery; (5) testifying at hearings; (6) attending the mediation; (7) providing sworn statements; and/or (8) otherwise providing material information to Plaintiffs' counsel above and beyond normal course. (Ex. B, Coffman Dec. ¶ 24-25; Ex. C, Bryant Dec., ¶ 22-23). They also attached their names to publicly filed lawsuits against an employer that dominates where they live. *Osman*, 2018 U.S. Dist. LEXIS 78222, at *5 (citing *Sand v. Greenberg*, 2011 U.S. Dist. LEXIS 155013, 2011 WL 784602, at *3 (S.D.N.Y. Oct. 6, 2011) (approving award in FLSA case because plaintiffs "took risks by putting their names on this lawsuit," including that of "blacklisting"). For their individual efforts, Plaintiffs are requesting service payments as follows: (1) Matthew Godsey: $15,000; (2) Mark Satterly: $12,500; (3) Jasson Dunaway: $10,000; (4) Josh Wagler: $10,000; and (5) Jason Myers: $2,500. (Ex. B, Coffman Dec. ¶ 24-25; Ex. C, Bryant Dec., ¶ 22-23)

The proposed service payments set forth in the agreement are within the range awarded by district courts in this Circuit and in wage and hour actions in other jurisdictions. *See Al-Sabur, et*

*al. v. ADS Alliance Data Systems, Inc.*, No. 2:18-cv-957, ECF No. 23 (S.D. Ohio Aug. 6, 2019) (Smith, J.) (approving service awards of $12,500 for a representative plaintiff and $2,500 for an Opt-In Plaintiff); *Mullins v. S. Ohio Pizza, Inc.*, No. 1:17-CV-426, 2019 WL 275711, at *6 (S.D. Ohio Jan. 18, 2019) (Dlott, J.) ($10,000 service award for each named plaintiff); *Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-CV-516, 2019 WL 6310376, at *8 (S.D. Ohio Nov. 25, 2019) (Rice, J.) ($10,000 service award for each named plaintiff); *Arledge v. Domino's Pizza, Inc.*, No. 3:16-CV-386-WHR, 2018 WL 5023950, at *6 (S.D. Ohio Oct. 17, 2018) (Rice, J.) ($10,000 service award for each named plaintiff); *Swigart v. Fifth Third Bank*, 2014 WL 3447947 *7 (S.D. Ohio July 11, 2014)(approving "modest class representative award" requests of $10,000 to each of the class representatives in FLSA/Rule 23 hybrid action); *In re Polyurethane Foam Antitrust Litig.*, 135 F. Supp. 3d 679, 694 (N.D. Ohio 2015) (awarding $35,000 service awards); *Johnson v. Midwest Logistics Sys.*, No. 2:11-CV-1061, 2013 U.S. Dist. LEXIS 74201, at *20 (S.D. Ohio May 25, 2013) (awarding $12,500 service award); *Abadeer v. Tyson*, 3:09-cv-00125, Dkt. 420 (M.D. Tenn. October 17, 2014)(approving service awards ranging from $500 to $11,500 for participating plaintiffs); *Bijoux v. Amerigroup N.Y., LLC*, 2016 U.S. Dist. LEXIS 68969, *4 (E.D.N.Y. May 12, 2016)(awarding service payments between $2,000 and $10,000 to participating plaintiffs); *Fosbinder-Bittorf v. SSM Health Care of Wisconsin, Inc.*, 2013 U.S. Dist. LEXIS 152087, *4 (W.D. Wis. Oct. 23, 2013)(approving service payments between $5,000 and $15,000 to named and participating plaintiffs in FLSA/Rule 23 hybrid action); *Hyun v. Ippudo USA Holdings*, 2016 U.S. Dist. LEXIS 39115, *6 (S.D.N.Y. Mar. 24, 2016)(service awards representing 5% of the settlement fund are "well within the range of service awards recently approved" in FLSA cases).

As discussed more fully above, the incentive awards are appropriate in light of the Representative Plaintiffs' service in the Litigation.

### C. Approval of the Settlement under the FLSA is Appropriate.

The court presiding over an FLSA action may approve a proposed settlement of the action under Section 16(b) of the FLSA "after scrutinizing the settlement for fairness." *Landsberg v. Acton Enterprises, Inc.*, No. C2-05-500, 2008 WL 2468868, at *1, n.1 (S.D. Ohio June 16, 2008) (quoting *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1353 (11th Cir. 1982)). As a district court in the Sixth Circuit has observed, "[t]he need for the court to ensure that any settlement of [an FLSA] collective action treats the plaintiffs fairly is similar to the need for a court to determine that any class-action settlement is 'fair, reasonable, and adequate.'" *Crawford v. Lexington-Fayette Urban County Gov't*, No. 06-299-JBC, 2008 WL 4724499, at *3 (E.D. Ky. Oct. 23, 2008).

The standard for approval of an FLSA settlement is lower than for a Rule 23 settlement because an FLSA settlement does not implicate the same due process concerns as does a Rule 23 settlement. *McKenna v. Champion Int'l Corp.*, 747 F.2d 1211, 1213 (8th Cir. 1984)(explaining that FLSA collective actions do not implicate the same due process concerns as Rule 23 actions because, under the FLSA, "parties may elect to opt in but a failure to do so does not prevent them from bringing their own suits at a later date"). Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes. *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1358, fn.8 (11th Cir. 1982). Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. *Id*. at 1353-1354. Thus, if the proposed settlement reflects a reasonable compromise over contested issues, a court should approve the settlement. *Id*. at 1354.

In this case, as detailed above, the Settlement was a result of arm's-length negotiations resulting in a reasonable, fair, and adequate resolution for the settlement class members. This Court should approve the proposed Settlement.

**D. The Attorney's Fees as Percentage of Common Fund as well as Reimbursement of Costs to Plaintiffs' Counsel Are Proper and Reasonable.**

**1. The Mandatory Provisions of Attorney Fees and Costs under the FLSA and the Ohio Wage Act**

The mandatory prevailing plaintiff's attorney's fees provision of the FLSA and the Ohio Wage Act exist to enable plaintiffs to employ reasonably competent lawyers without cost to themselves if they prevail, and thereby to help ensure enforcement of the substantive provisions of each Act. As more fully outlined below, Plaintiffs seek approval of the amount agreed upon by the Parties in the Settlement Agreement (one-third of the common settlement fund) for payment in full of Class Counsel's attorney's fees as well as reimbursement of advanced costs and expenses incurred in the prosecution of the Litigation. In particular, Plaintiffs request a fee award in the amount of $400,000 and reimbursement of reasonable expenses incurred in the amount of $14,628.00 for payment of Class Counsel's costs advanced in the Airstream Overtime Litigation. Defendant does not oppose this request.

The FLSA[3] has a fee-shifting provision which provides that reasonable attorney fees and costs should be awarded to a prevailing party. 29 U.S.C. §216(b). The federal courts have long recognized the profound importance of plaintiffs' right to recover attorney's fees under the FLSA. In *United Slate, Tile and Composition Roofers, Damp and Waterproof Workers Association, Local 307, et al. v. G & M Roofing and Sheet Metal Co., Inc.*, 732 F.2d 495, 501 (6th Cir. 1984), the Court recognized that an award of attorney's fees is mandatory under 29 U.S.C. §216(b). The Court explained, that "the purpose of §216(b) is to insure effective access to the judicial process by providing attorneys for prevailing plaintiffs with wage and hour grievances; [o]bviously Congress intended that the wronged employee should receive his full wages…without incurring

---

[3] The Ohio Wage Act also provides for the recovery of attorney's fees and costs, but the analysis will be limited to the right to attorney's fees and costs under the FLSA.

any expense for legal fees or costs." *Id.* (quoting *Maddrix v. Dize*, 153 F.2d 274, 275-76 (4th Cir. 1946)). Plaintiffs "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983) (quoting S. Rep. No. 94-1011, at 4 (1976), 1976 U.S.C.C.A.N. at 5912).

The FLSA does not establish what constitutes a reasonable fee; consequently, "[t]he determination of a reasonable fee must be reached through an evaluation of a myriad of factors, all within the knowledge of the trial court, examined in light of the congressional policy underlying the substantive portions of the statute providing for the award of fees." *United Slate, Tile & Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 v. G&M Roofing and Sheet Metal Co.*, 732 F.2d 495, 501 (6th Cir. 1984). That determination is informed by both the purpose and practical operation of the FLSA. "The purpose of the FLSA attorney fees provision is 'to insure effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances.'" *Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir. 1994) (quoting *United Slate*, 732 F.2d at 502).

The nature of FLSA overtime awards usually focuses the Court on the vindication of statutory rights rather than the amount recovered. "Courts should not place an undue emphasis on the amount of the plaintiff's recovery because an award of attorney fees [in a FLSA case] 'encourage[s] the vindication of congressionally identified policies and rights.'" *Fegley*, 19 F.3d at 1135 (quoting *United Slate,* 732 F.2d at 503). *Accord City of Riverside v. Rivera*, 477 U.S. 561, 574 (1986) ("reject[ed] the proposition that fee awards . . . should necessarily be proportionate to the amount of damages a civil rights plaintiff actually recovers").

### 2. **The Common Fund Approach is Appropriate**

The United States Supreme Court "has recognized consistently that a litigant or a lawyer

26

who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing C. v. Van Gemert*, 444 U.S. 472, 478 (1980). The Sixth Circuit has approved a court's use of the percentage-of-the-fund method to determine a reasonable attorney's fee from a common fund settlement. *Rawlings v. Prudential Bache Prop., Inc.*, 9 F.3d 513, 515–16 (6th Cir. 1993); *see also Lonardo v. Travelers Indemnity Co.*, 706 F. Supp. 2d 766, 790 (N.D. Ohio 2010) (the percentage-of-the-fund method is the "preferred method for common fund cases, where there is a single pool of money and each class member is entitled to a share"); *Swigart v. Fifth Third Bank*, 2014 WL 3447947 *5 (S.D. Ohio July 11, 2014) (adopting the percentage approach as "the most appropriate method for determining reasonable attorneys' fees" in wage and hour cases). "The percentage of the common fund method has the advantage of establishing reasonable expectations on the part of class counsel as to their expected recovery, and encouraging early settlement before substantial fees and expenses have accumulated." *Rotuna v. W. Customer Mgmt. Grp., LLC*, No. 4:09CV1608, 2010 U.S. Dist. LEXIS 58912, at *20 (N.D. Ohio June 15, 2010) (approving fees at one third of common fund). Furthermore, it permits courts to focus on the benefit conferred upon a class or collective rather than the cumbersome task of reviewing complicated and lengthy billing documents. *Rawlings*, 9 F.3d at 516 ("[T]he lodestar method has been criticized for being too time-consuming of scarce judicial resources."). Further, there are good reasons to prefer using the percentage of the fund method. *See In re Cardinal Health Inc. Sec. Litigations*, 528 F. Supp. 2d 752, 761–62 (S.D. Ohio 2007) (providing an excellent discussion on the subject). In these scenarios, there are many good reasons to prefer using the percentage of the fund method because it encourages efficiency, judicial economy, and aligns the interests of lawyers with the class. *In re Cardinal Health Inc. Sec. Litigations*, 528 F. Supp. 2d 752, 761–62 (S.D. Ohio 2007). In contrast, the lodestar method

burdens courts "with the tedious task of auditing time records," and is still subject to arbitrariness. *Id.*

While district courts may use either percentage of the fund or lodestar method to calculate fee awards, courts in the Southern District of Ohio generally use the percentage of the fund method and concluding that a cross-check[4] is unnecessary. *Rikos v. Proctor & Gamble Co.*, No. 1:11-cv-226, 2018 WL 2009681, at *8-10 (S.D. Ohio Apr. 30, 2018) (Black, J.). Indeed, "performing a cross-check of the attorney-fee request using Class Counsel's lodestar is optional." *Feiertag v. DDP Holdings, LLC*, No. 14-cv-2643, 2016 U.S. Dist. LEXIS 122297, at *20-21 (S.D. Ohio Sep. 9, 2016); *Dillow v. Home Care Network, Inc.*, No. 1:16-cv-612, 2018 U.S. Dist. LEXIS 170579, at *16 (S.D. Ohio Oct. 3, 2018) (lodestar cross-check of percentage of the fund fee award is "unnecessary").

### 3. Courts in the Sixth Circuit Regularly Approve that 1/3 of the Common Fund is a Reasonable Attorney Fee Award.

That said, 1/3 of the settlement fund is a "normal fee amount in a wage and hour case." *Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-CV-516, 2019 WL 6310376, at *5 (S.D. Ohio Nov. 25, 2019) (Rice, J.) (approving as reasonable 1/3 for attorney's fees from a common fund of $1,140,000); *Arledge v. Domino's Pizza, Inc.*, No. 3:16-CV-386-WHR, 2018 WL 5023950, at *4 (S.D. Ohio Oct. 17, 2018) (Rice, J.) (observing collective cases that attorney fee awards "typically range from 20 to 50 percent of the common fund"); *Osman*, 2018 U.S. Dist. LEXIS 78222, at *6 (citations omitted) ("one-third of the common fund is a reasonable attorneys' fee award 'and has been approved in similar FLSA collective actions in this judicial district.'"). Indeed, following the common fund approach, this Court recently approved 1/3 of the common

---

[4] Should the Court take the optional approach of requiring Plaintiffs to conduct a lodestar cross-check analysis, Plaintiffs respectfully request leave to submit their lodestar for *in camera* review.

fund for the same counsel. *See Al-Sabur, et al. v. ADS Alliance Data Systems, Inc.*, No. 2:18-cv-957, ECF No. 23 (S.D. Ohio Aug. 6, 2019) (Smith, J.) (approving as reasonable 1/3 of the common fund of $525,000 for attorney fees); *Walton, et al. v. Oldcastle BuildingEnvelope, Inc.*, No. 3:18-cv-2936, ECF No. 44 (N.D. Ohio Mar. 2, 2020) (Carr, J.) (approving as reasonable 1/3 of a total common fund of $775,000 for attorney fees); *see also Swigart*, 2014 WL 3447947 *7 ("An award of 33% of the total settlement fund" – before additional payment for expenses – "is well within the range of fees requested in class and collective actions in Ohio federal district courts. [Cit.]; *Kritzer*, 2012 U.S. Dist. LEXIS 74994, 2012 WL 1945144, at *9-10 (awarding attorney's fees and costs up to $235,000 out of a settlement of $455,000 (52% of total recovery) in a hybrid FLSA collective and Ohio class action for unpaid overtime)."); *Bessey v. Packerland Plainwell, Inc*. 2007 WL 3173972 (W.D. Mich. 2007) (approving a one-third attorneys' fee award in an FLSA settlement); *Rotuna v. W. Customer Mgmt. Grp., LLC*, No. 4:09-CV-1608, 2010 U.S. Dist. LEXIS 58912, 2010 WL 2490989, at *7 (N.D. Ohio June 15, 2010) (approving one-third of the common fund as attorneys' fees). *Accord Dillworth v. Case Farms Processing, Inc*., 5:08CV1694, 2009 U.S. Dist. LEXIS 76947 (N.D. Ohio 2009); *Jackson v. Papa John's,* Case No. 1:08-CV-2791, 2008 U.S. Dist. LEXIS 107650 (N.D. Ohio 2008); *Fincham v. Nestle Prepared Foods Co*., 1:08-CV-73 (N.D. Ohio 2008); *McGhee v. Allied Waste Indus.,* Case No. 1:07-CV-1110 (N.D. Ohio 2007)); *In re Revco Securities Litigation*, Fed. Sec. L. Rptr. ¶ 96,956, at 94,069 (N.D. Ohio 1993); *Hebert v. Chesapeake Operating, Inc.*, 2019 WL 4574509, Case No. 2:17-cv-852, *8 (S.D. Ohio Sept. 20, 2019) ("33% is typical for attorney's fees in common fund, FLSA collective actions in this District…").[5]

---

[5] *See also Lackie v. U.S. Well Servs.,* No. 2:15-cv-695, 2017 U.S. Dist. LEXIS 28920, at *10 (S.D. Ohio Mar. 1, 2017); *adopted and affirmed Lackie v. U.S. Well Servs.*, No. 2:15-cv-695, 2017 U.S. Dist. LEXIS 34720 (S.D. Ohio Mar. 10, 2017) (J. Smith) (*see also* Southern District of Ohio, Case No. 2:15-CV-00695, Dkt. Entry 108)*; Perry v. DASCO Home Medical Equipment, Inc*., Southern District of Ohio, Case No.

As a result, the proper measure when analyzing a percentage of the fund award is to take the attorney's fees "as the numerator and the denominator is the total dollar figure of the Total Benefit to the class (which includes the 'benefit to class members,' the attorney's fees and may include costs of administration)." *Rikos*, 2018 WL 2009681 at *8, *quoting Gascho v. Glob Fitness Holdings, LLC*, 822 F.3d 269, 282 (6th Cir. 2016).

In this case, under *Gascho*, the correct measure is: $400,000 / $1,200,000 = 33.3% fee award. As noted above, a 33.3% award for attorney fees is well within the range courts in this district (and others) have found to be reasonable. *See Rikos*, 2018 WL 2009681 at *9.

For these reasons, Plaintiffs respectfully request an award of $400,000 in attorney's fees and $14,628.00 in expenses incurred in this litigation. Defendant does not oppose this request. A detailed breakdown of expenses incurred in this matter is detailed by Class Counsel. (Ex. B,

---

2:19-cv-01921; Dkt. Nos. 10 and 11 (J. Marbley); *Campbell v. Wise Medical Staffing, Inc.,* Southern District of Ohio, Case No. 2:18-cv-00493; Dkt. Nos. 54-56 (J. Morrison); *Green, et. al. v. H.A.D., Inc.*, Southern District of Ohio, Case No. 2:15-cv-933 (1/3 fee approved in case where parties agreed to early mediation without motion practice and formal discovery); *Braucher, et. al. v. Atlas Railroad Construction, LLC.*, Northern District of Ohio Case No. 5:14-cv-01601 (1/3 fee approved in case where parties agreed to early mediation without motion practice and formal discovery); *Mulloy, et al. v. Cuyahoga County*, Northern District of Ohio, Case No. 1:14-cv-02546 (same); *Terry v. All Hearts Home Health Care*, Northern District of Ohio Case No. 1:16-cv-515; *Houston, et. al. v. Progressive Casualty Insurance Co.,* Northern District of Ohio Case No. 1:15-cv-01853; *Rucker v. Quality Blow Molding,* Northern District of Ohio Case No. 1:15-cv-1039; *Douglas, et al. v. J&K Subway, Inc.,* Northern District of Ohio Case No. 4:14-cv-2621; *Smith v. CMHA*, Northern District of Ohio Case No. 1:14-cv-1409; *Armbruster v. City of Cleveland*, Northern District of Ohio, Case No. 1:13-cv-2626; *Williams v. Beckett Air, Inc.*, Northern District of Ohio Case No. 1:12-cv-2796; *Welch v. Incept Corporation*, Northern District of Ohio Case No. 5:12-cv-1775; *Malaj v. Gohlke*, Northern District of Ohio Case No. 1:11-cv-1578; *Campbell v. Judson Services*, Northern District of Ohio, Case No. 1:11-cv-906; *Murphy v. 1-800-Flowers*, Northern District of Ohio, Case No. 1:10-cv-1822; *Miller v. National Enterprise Systems*, Northern District of Ohio, Case No. 1:10-cv-1664; *Osolin v. Turocy & Watson LLP, et al,* Northern District of Ohio, Case No. 1:09-cv-2935; *Kelly v. National Enterprise Systems*, Northern District of Ohio, Case No. 1:09-cv-2268; *McNelley v. Aldi,* Northern District of Ohio, Case No. 1:09-cv-1868; *Rotuna v. West Customer Management Group,* Northern District of Ohio, Case No. 4:09-cv-1608; *Jackson v. Papa John's*, Northern District of Ohio, Case No. 1:08-cv-2791; *Dillworth v. Case Farms*, Northern District of Ohio, Case No. 5:08-cv-1694; *Fincham v. Nestlé Prepared Foods Company*, Northern District of Ohio, Case No. 1:08-cv-73; and *McGhee v. Allied Waste Industries*, Northern District of Ohio, Case No. 1:07-cv-1110

Coffman Dec. ¶ 40; Ex. C, Bryant Dec., ¶ 38) Accordingly, Plaintiffs respectfully request that the Court approve the settlement.

### IV.    <u>CONCLUSION</u>

For the reasons set forth above, the Parties respectfully request that the Court enter an Order as follows:

1.    Preliminarily approving the Settlement as fair, reasonable, and adequate under 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23(e);

2.    Granting certification pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3) of a settlement Class as defined herein;

3.    Appointing Matthew J.P. Coffman of Coffman Legal, LLC and Daniel I. Bryant of Bryant Legal, LLC as class counsel pursuant to Fed. R. Civ. P. 23(g);

4.    Appointing Analytics, LLC as the Claims Administrator for purposes of administering the settlement;

5.    Approving the form, content, and manner of the Notice to the proposed settlement class; and

6.    Setting a final approval hearing on a schedule consistent with the Parties' settlement Agreement and the Court's calendar.

Respectfully Submitted,

**COFFMAN LEGAL, LLC**                                     DINSMORE & SHOHL, LLP

*/s/ Matthew J.P. Coffman*                              */s/ Karen S. Hockstad*
Matthew J.P. Coffman (0085586)                 Karen S. Hockstad (0061308)
1550 Old Henderson Road                            Glen R. McMurry (0082600)
Suite 126                                                        Andrew S. Good (008653)
Columbus, Ohio 43220                                 karen.hockstad@dinsmore.com
Phone: 614-949-1181                                    glen.mcmurry@dinsmore.com
Fax: 614-386-9964                                         andrew.good@dinsmore.com
Email: mcoffman@mcoffmanlegal.com       191 W. Nationwide Blvd., Suite 300

**BRYANT LEGAL, LLC**

*/s/ Daniel I. Bryant*
Daniel I. Bryant (0090859)
1550 Old Henderson Road
Suite 126
Columbus, Ohio 43220
Phone: 614-704-0546
Fax: 614-573-9826
Email: dbryant@bryantlegalllc.com

*Attorneys for Named Plaintiffs and those
similarly situated*

Columbus, Ohio 43215
P. 614.628.6880
F. 614.628.6890

*Attorneys for Defendant Airstream, Inc.*


## CERTIFICATE OF SERVICE

It is hereby certified that the foregoing has been filed via the electronic filing system on June 1, 2020.  Notice of filing will be performed by the Court's electronic filing system, and Parties may access the document through the electronic filing system.

*/s/ Matthew J.P. Coffman*
Matthew J.P. Coffman