**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| Mark Satterly, Matthew Godsey, and Josh Wagler,<br><br>   On behalf of themselves and other members of the general public similarly situated,<br><br>                    Plaintiffs,<br>v.<br><br>Airstream, Inc.,<br>                    Defendant. | * <br> * <br> * <br> * <br> * <br> * <br> * <br> * | Case No. 3:19-cv-32<br><br>Judge Walter H. Rice |
| Matthew Godsey, Josh Wagler, & Jasson Dunaway,<br><br>   On behalf of themselves and other members of the general public similarly situated,<br><br>                    Plaintiffs,<br>v.<br><br>Airstream, Inc.,<br>                    Defendant. | * <br> * <br> * <br> * <br> * <br> * <br> * <br> * | Case No. 3:19-cv-107<br><br>Judge Walter H. Rice |

## JOINT MOTION FOR AND MEMORANDUM IN SUPPORT OF FINAL APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS

Named Plaintiffs Mark Satterly ("Named Plaintiff Satterly" or "Satterly") Matthew Godsey ("Named Plaintiff Godsey" or "Godsey"), Josh Wagler ("Named Plaintiff Wagler" or "Wagler"), Jasson Dunaway ("Named Plaintiff Dunaway" or "Dunaway") (collectively "Named Plaintiffs" or "Representative Plaintiffs"), by and through undersigned counsel, for the reasons set forth in the memorandum of law in support of this motion, hereby move the Court for entry of an order:

1.   Granting certification pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3) of a settlement class as defined in the accompanying memorandum between February 1, 2016 and January 1, 2020 except for the one individual who elected to opt out of the settlement class;

2.   Approving the settlement as fair, reasonable, and adequate under 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23(e);

3.   Approving the Settlement Agreement and that it be implemented according to its terms and conditions as set forth in the Settlement Agreement;

4.   Granting Class Counsel their attorney fees, expenses, and costs; and

5.   Dismissing this action on the merits with prejudice.

Respectfully Submitted,

**COFFMAN LEGAL, LLC**

*/s/ Matthew J.P. Coffman*
Matthew J.P. Coffman (0085586)
1550 Old Henderson Road
Suite 126
Columbus, Ohio 43220
Phone: 614-949-1181
Fax: 614-386-9964
Email: mcoffman@mcoffmanlegal.com

**BRYANT LEGAL, LLC**

*/s/ Daniel I. Bryant*
Daniel I. Bryant (0090859)
1550 Old Henderson Road
Suite 126
Columbus, Ohio 43220
Phone: 614-704-0546
Fax: 614-573-9826
Email: dbryant@bryantlegalllc.com

*Attorneys for Named Plaintiffs and those
similarly situated*

DINSMORE & SHOHL, LLP

*/s/ Karen S. Hockstad*
Karen S. Hockstad (0061308)
Glen R. McMurry (0082600)
Andrew S. Good (008653)
karen.hockstad@dinsmore.com
glen.mcmurry@dinsmore.com
andrew.good@dinsmore.com
191 W. Nationwide Blvd., Suite 300
Columbus, Ohio 43215
P. 614.628.6880
F. 614.628.6890

*Attorneys for Defendant Airstream, Inc.*

## MEMORANDUM IN SUPPORT

### I.    INTRODUCTION

On June 15, 2020, this Court preliminarily approved the proposed Rule 23 and 216(b) settlement in this matter. (*See* ECF No. 132) In doing so, the Court (1) Preliminarily approved of and incorporated by reference all definitions set forth in the Class Action Settlement and Release Agreement ("Settlement Agreement") as fair, reasonable, and adequate under 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23(e); (2) Granted certification pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3) of a settlement class consisting of the Class Members, as defined in the terms and conditions of the Settlement Agreement (ECF No. 131-1), who worked at Airstream's facility in Jackson Center, Ohio as hourly, non-exempt employees who performed at least 40 hours of work in any workweek at any time between February 1, 2016 and the date the Court finally approves of the Settlement and who did not opt out of the Class Action; (3) appointed Matthew J.P. Coffman of Coffman Legal, LLC and Daniel I. Bryant of Bryant Legal, LLC as class counsel pursuant to Fed. R. Civ. P. 23(g); (4) appointed Mark Satterly, Matthew Godsey, Josh Wagler, and Jasson Dunaway as Class Representatives; (5) appointed Analytics Consulting, LLC ("Analytics") as the Settlement Administrator; and (6) approved of the settlement procedure and timeline as set forth in the Court's Preliminary Approval Order, dated June 15, 2020 (ECF No. 132).

Only one potential class member opted out of the settlement by requesting exclusion. Counsel worked with Analytics to ensure notice of the settlement was successful.

Through these efforts, the Parties achieved a successful Rule 23 and 216(b) settlement, which provided the 1,025 additional[1] participating Class Members individual settlement awards

---

[1] There were 24 initial individuals who joined this action. The total number of Class Members included in the Settlement Agreement is 1,049 out of 1,050 (because one individual opted-out).

based on the settlement allocation formula described in the Motion for Preliminary Approval and the Settlement Agreement. Therefore, as more fully explained below, final approval is appropriate.

## II. RELEVANT PROCEDURAL POSTURE AND FACTUAL BACKGROUND SINCE PRELIMINARY APPROVAL ON JUNE 15, 2020

Since June 15, 2020, the date on which this Court granted the Joint Motion for Preliminary Approval of Class and Collective Action Settlement and Certification of Settlement Class ("Preliminary Approval Motion") in its Order (ECF No. 132), Analytics, implemented the notice plan as outlined below.

On or about June 15, 2020, Plaintiffs' counsel provided two spreadsheets containing the class member data, including the updated contact information of 1,050 class members, their employee ID numbers, and the settlement payment amounts. (*See* Exhibit A, Declaration Jeffrey J. Mitchell, Project Manager for Analytics Consulting, LLC, ¶ 1-6) Analytics subsequently processed the records through the US Postal Service's NCOA database to standardize and update the mailing addresses. (*Id.*, ¶ 7)

On July 9, 2020, Analytics sent the Settlement Notices via First-Class United States Mail to the Class Members, consisting of a total of 1,050 Class Members, pursuant to the settlement procedure and timeline approved by the Court.[2] During the 45-day Notice Period, Analytics received 18 notices that were returned as undeliverable, and it searched for new addresses and re-mailed 11 of the notices to the updated addresses. (*Id.*, ¶ 9) Further, Analytics forwarded 14 notices that had a forwarding address provide by the Post Office. (*Id.*)

Pursuant to the Court-approved notice plan, the Class Members had 45 days from the date of mailing to review the terms of the Notice of Collective and Class Action Lawsuit Settlement

---

[2] ECF No. 132, at PAGEID # 3262 ("Distribution of the Notice of Collective and Class Action Lawsuit Settlement (Exhibit 4 to the Settlement Agreement) 24 days after entry of this Order.")

and submit a request to be excluded or object. (*See* ECF No. 132, PAGEID # 3262) Analytics set up a case-specific toll-free number and email address for inquiries to provide information to Class Members. (*See* Ex A, ¶ 10-12) As of the deadline of August 24, 2020 to request exclusion, Analytics received one request. (*Id*.)[3] In addition, the deadline to object to the settlement was also on August 24, 2020 and Analytics did not receive a single objection. (*Id*.)

## III.     LAW AND ARGUMENT

Insofar as the settlement agreement proposes to settle claims brought under the Ohio Acts and FLSA as agreed to between the parties, the settlement is subject to approval by the Court under Fed. R. Civ. P. 23(e) and 29 U.S.C. § 216(b). Aside from the final approval hearing requirement under Rule 23(e)(2), which is scheduled for Friday, September 25 at 1:45 pm, the remaining requirements set forth in Rule 23(a)-(f) have been met. For the reasons outlined below, final approval is appropriate.

### A.     FINAL APPROVAL OF THE SETTLEMENT UNDER RULE 23(e) IS APPROPRIATE

Before a district court approves a settlement, it must find that the settlement is "fair, reasonable, and adequate." *Johnson v. Midwest Logistics Sys., Ltd*., 2013 WL 2295880 (S.D. Ohio May 24, 2013) (*citing UAW v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007)). A district court looks to seven factors in determining whether a class action settlement is fair, reasonable, and adequate:

(1) the risk of fraud or collusion;
(2) the complexity, expense, and likely duration of the litigation;
(3) the amount of discovery engaged in by the parties;
(4) the likelihood of success on the merits;
(5) the opinions of class counsel and class representatives;
(6) the reaction of absent class members; and
(7) the public interest.

---

[3] A copy of the exclusion request is attached as Exhibit B.

*Id.* (*citing UAW*, 497 F.3d at 631); *See also Wright v. Premier Courier, Inc.*, No. 2:16-cv-420, 2018 WL 3966253, *3 (S.D. Ohio Aug. 17, 2018) (Watson, J.) (citing *Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235, 244 (6th Cir. 2011)). In reviewing a proposed class action settlement, the district court has "wide discretion in assessing the weight and applicability" of the relevant factors. *Wright*, 2018 WL 3966253 at *3 (quoting *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205–06 (6th Cir. 1992.)). As set forth below, the settlement meets the standard for final settlement approval as to each factor and should be approved by the Court.

### 1. The Absence of Fraud or Collusion Supports Approval.

Courts presume the absence of fraud or collusion unless there is evidence to the contrary. *Wright*, 2018 WL 3966253 at *3 (quoting *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205–06 (6th Cir. 1992.)). As noted in the Preliminary Approval Motion, the parties reached a settlement after an extensive review and computation of damages, substantial discovery exchanged between the parties, a full day of mediation before Magistrate Judge Elizabeth P. Deavers, and a month of continued settlement negotiations between February 10, 2020 and on March 5, 2020.[4] As such, there is no indicia of fraud or collusion.

### 2. The Complexity, Expense, and Likely Duration of Continued Litigation Support Approval.

Generally, as this Court observed, most class actions are inherently complex and settlement avoids the costs, delays, and multitude of other problems associated with them. *Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-CV-516, 2019 WL 6310376, at *3 (S.D. Ohio Nov. 25, 2019) (Rice, J.); *Wright v. Premier Courier, Inc.*, No. 2:16-cv-420, 2018 WL 3966253, *3 (S.D. Ohio Aug. 17, 2018) (Watson, J.) (internal citations omitted); *In re Telectronics Pacing Sys., Inc.*, 137 F.Supp.2d 985, 1013 (S.D. Ohio 2001). As previously argued, the policy favoring the settlement

---

[4] *See* ECF No. 131, at PAGEID # 3156-59.

of class actions and other complex cases applies with particular force here. There were many disputes between the parties since the onset of the litigation and there were many more disputes ahead for the parties.

Accordingly, the litigation was difficult and complex and weighs in favor of the settlement. As such, these factors favor approval. *Wright*, 2018 WL 3966253 at *3-4. *See also Mitchell v. Indep. Home Care, Inc.*, No. 2:17-cv-717, 2019 WL 696941, at *3-4 (S.D. Ohio Feb. 20, 2019) (Vascura, M.J.), *report and recommendation adopted*, No. 2:17-cv-717, 2019 WL 1125760 (S.D. Ohio Mar. 12, 2019) (Watson, J.).

### 3. The Amount of Discovery Engaged in by the Parties Supports Approval because they Sufficiently Investigated the Claims and Defenses Asserted.

To confirm that the Plaintiffs "have had access to sufficient information to evaluate their case and to assess the adequacy of the proposed Settlement," the Court must consider the amount of discovery engaged in by the parties. *Wright*, 2018 WL 3966253 at *4 (quoting *In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 374 (S.D. Ohio 2006) (Watson, J.)). "In considering whether there has been sufficient discovery to permit the plaintiffs to make an informed evaluation of the merits of a possible settlement, the court should take account not only of court-refereed discovery but also informal discovery in which parties engaged both before and after litigation commenced." *Wright*, 2018 WL 3966253 at *4 (internal citations omitted). In this consideration, "the absence of formal discovery is not unusual or problematic, so long as the parties and the court have adequate information in order to evaluate the relative positions of the parties." *Id; Mitchell*, 2019 WL 696941, at *4 (S.D. Ohio Feb. 20, 2019) (Vascura, M.J.), *report and recommendation adopted*, No. 2:17-cv-717, 2019 WL 1125760 (S.D. Ohio Mar. 12, 2019) (Watson, J.); *See Dillow v. Home Care Network, Inc.*, 2018 WL 4776977, at *3 (S.D. Ohio Oct. 3, 2018) (stating that while the parties

had not reached conducting depositions, that "in a wage and hour case based primarily on payroll records, this is sufficient for the parties to properly evaluate their risks and fairly settle the claims").

In this case, the Parties engaged in substantial investigation prior to commencing and throughout the Airstream Overtime Litigation, including when negotiating a potential resolution.[5] The Parties exchanged written discovery and relevant information, including detailed payroll information and other business records of Airstream.[6] In addition, Class Counsel engaged in further independent investigation of the facts, reviewed pay data, confirmed damages calculations with a third-party expert, and conducted additional legal research regarding the claims and defenses in the lawsuits.[7] Thus, the legal issues were thoroughly researched by the Parties and the value of the claims properly assessed. As a result, this factor favors final approval. *Wright*, 2018 WL 3966253 at \*4; *See Mitchell*, 2019 WL 696941, at \*4 (S.D. Ohio Feb. 20, 2019) (Vascura, M.J.), *report and recommendation adopted*, No. 2:17-cv-717, 2019 WL 1125760 (S.D. Ohio Mar. 12, 2019) (Watson, J.).

4. **The Likelihood of Success on the Merits, as well as the Risks of Litigation and Uncertainty of Recovery, Favor Approval because there Exists a Bona Fide Dispute over Success on the Merits.**

"The most important of the factors to be considered in reviewing a settlement is the probability of success on the merits. The likelihood of success, in turn, provides a gauge from which the benefits of the settlement must be measured." *Wright*, 2018 WL 3966253 at \*4 (quoting *Poplar Creek*, 636 F.3d at 245 (quoting *In re Gen. Tire & Rubber Co. Sec. Litig.*, 726 F.2d 1075, 1086 (6th Cir. 1984)). *See Mitchell*, 2019 WL 696941, at \*4 (S.D. Ohio Feb. 20, 2019)

---

[5] *See* ECF No. 131, PAGEID # 3168.
[6] *Id*.
[7] *See* ECF No. 131, PAGEID # 3168.

(Vascura, M.J.), *report and recommendation adopted*, No. 2:17-cv-717, 2019 WL 1125760 (S.D. Ohio Mar. 12, 2019) (Watson, J.).

In this case, Counsel for both sides believe in the merits of their clients' positions and have vigorously represented their clients' interests throughout the Litigation, but nonetheless recognize that litigation is uncertain in terms of duration, cost, and result.[8] For example, the settlement provides relief to the settlement class members and eliminates the risks that the Parties would otherwise bear if the litigation were to continue on for years, which favors this factor. *See Barnes v. Winking Lizard, Inc.*, No. 1:18CV952, 2019 WL 1614822, at *3 (N.D. Ohio Mar. 26, 2019) (citing *Foster v. Nationwide Mut. Ins. Co.*, 710 F.3d 640 (6th Cir. 2013) (affirming bench trial verdict that special investigators were properly classified as exempt from the overtime pay requirements of the FLSA); *Henry v. Quicken Loans, Inc.*, 698 F.3d 897 (6th Cir. 2012) (affirming a jury verdict, reached after eight years of litigation, that mortgage bankers were properly classified as exempt from the overtime pay requirements of the FLSA).

Absent settlement, the Parties would have engaged in significant discovery, including, but not limited to responses to discovery requests of many, if not all of the Opt-In Plaintiffs, many depositions, discovery-related motion practice, further testimony at any additional hearings, and other motion practice (Rule 23 class certification, FLSA collective decertification, dispositive motions on the merits and damages issues).[9] Further, even if they prevail on the merits, any recovery could be significantly curtailed if a jury concludes that Airstream acted in good faith and Representative Plaintiffs fail to establish a willful violation of the law.[10] Moreover, an appeal could be filed.[11]

---

[8] *Id.*
[9] *See* ECF No. 131, at PAGEID # 3169.
[10] *Id.*
[11] *Id.*

On the other hand, Defendant faces the prospect of class-wide liability to 1,025 current and former employees, as well as liquidated damages and attorney's fees following lengthy and expensive litigation.[12] These considerations all support approval of the settlement.[13] Indeed, by agreeing to the settlement, these risks are eliminated, and participating class members are guaranteed to receive an excellent recovery now, rather than possibly receiving a recovery years from now (or not receiving any recovery ever). *Barnes*, 2019 WL 1614822, at \*3; *See also Hall v. U.S. Cargo and Courier Service, LLC*, 2019 WL 6001198 at \*4 (S.D. Ohio Nov. 14, 2019) (Sargus, J) (denying defendant's request for costs following a jury trial in a FLSA collective action). As a result, these considerations all support final approval of the settlement. *Wright*, 2018 WL 3966253 at \*4-5.

### 5. The Opinions of Class Counsel and Representative Plaintiffs Favor Approval

The recommendation of Class Counsel, skilled in class actions and corporate matters, that the Court should approve the Settlement is entitled to deference. *Wright*, 2018 WL 3966253 at \*4-5; *Mitchell*, 2019 WL 696941, at \*5 (S.D. Ohio Feb. 20, 2019) (Vascura, M.J.), *report and recommendation adopted*, No. 2:17-cv-717, 2019 WL 1125760 (S.D. Ohio Mar. 12, 2019) (Watson, J.). *See, e.g., Williams v. Vukovich*, 720 F.2d 909, 922-23 (6th Cir. 1983) ("The court should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs [T]he deference afforded counsel should correspond to the amount of discovery completed and the character of the evidence uncovered."). *See also Kritzer v. Safelite Solutions, LLC*, No. 2:10-cv-0729, 2012 WL 1945144, \*7 (S.D. Ohio May 30, 2012) 2012 WL 1945144, at

---

[12] *Id.*
[13] *Id.*

*7 ("The Court gives weight to the belief of experienced counsel that a settlement is in the best interests of the class.").

In this case, the Parties' counsel are experienced in wage-and-hour class and collective actions, have acted in good faith, and have represented their clients' best interests in reaching this Settlement.[14] As Judge Morrison recently opined with respect to Plaintiffs' Class Counsel, they both have a "solid amount of knowledge in the FLSA arena."[15] And, for the reasons set forth above as well as in their declarations already submitted before the Court, Class Counsel is of the opinion that the Settlement is a fair, reasonable, and adequate resolution of this Litigation.[16] Likewise, Representative Plaintiffs agree that the settlement is fair and reasonable, and they assent to the terms of the Settlement.[17] As such, these factors favor final approval. *See Wright*, 2018 WL 3966253 at *5; *Kritzer*, 2012 WL 1945144 at *8 (citing *In re Telectronics Pacing Systems, Inc.*, 137 F.Supp.2d 985, at 1013 (S.D. Ohio 2001)).

### 6. The Reaction of Class Members Favor Approval

The Court must also consider the reaction of the absent class members. *Wright*, 2018 WL 3966253 at *5 (internal citations omitted). As indicated above, **only one potential class member requested exclusion from the settlement**,[18] and no Class Member otherwise objected to the settlement. (Ex. A, ¶ 10-12) As such, no further analysis is needed because this fact favors final approval. *Wright*, 2018 WL 3966253 at *5; *Mitchell*, 2019 WL 696941, at *5 (S.D. Ohio Feb. 20,

---

[14] *See* ECF No. 131, at PAGEID # 3170.
[15] *Rangel v. Paramount Heating & Air Conditioning, LLC, et al.*, No. 2:17-cv-473, ECF No. 100, PAGEID # 1768 (Mar. 6, 2020) (Morrison, J.); *see also McCullen v. Toledo Country Club*, No. 3:18-cv-276, ECF No. 36, PageID # 300 (Feb. 14, 2020) (Knepp, M.J.) (the Court is "familiar with Plaintiff's Counsel's work in this and other wage and hour causes and finds that they have the requisite experience in complex wage and hour matters.").
[16] ECF No. 131, at PAGEID # 3170; *see also* ECF No. 131-2, Declaration of Matthew J.P. Coffman, at PAGEID # 3230-31; ECF No. 131-3, Declaration of Daniel I. Bryant, at PAGEID # 3254-58.
[17] *Id*.
[18] See Exhibit B.

2019) (Vascura, M.J.), *report and recommendation adopted*, No. 2:17-cv-717, 2019 WL 1125760 (S.D. Ohio Mar. 12, 2019) (Watson, J.). *See also Kritzer*, 2012 WL 1945144 at *7.

### 7. The Public Interest Favors Approval

As previously observed by this Court, the public interest favors the settlement of class action litigation. *Wright*, 2018 WL 3966253 at *5; *Mitchell*, 2019 WL 696941, at *5-6 (S.D. Ohio Feb. 20, 2019) (Vascura, M.J.), *report and recommendation adopted*, No. 2:17-cv-717, 2019 WL 1125760 (S.D. Ohio Mar. 12, 2019) (Watson, J.); *Kritzer*, 2012 WL 1945144 at *8; *Hainey v. Parrott*, 617 F.Supp.2d 668, 679 (S.D. Ohio 2007). *See also Edwards v. City of Mansfield*, 2016 U.S. Dist. LEXIS 64159, *10 (N.D. Ohio May 16, 2016); and *Williams v. K&K Assisted Living LLC*, 2016 U.S. Dist. LEXIS 9310, *3 (E.D. Mich. Jan. 27, 2016) (district courts may approve FLSA settlements "in order to promote the policy of encouraging settlement of litigation"), *quoting*, *Lynn's Food Stores, Inc. v. U.S. By & Through U.S. Dep't of Labor, Employment Standards Admin., Wage & Hour Div*., 679 F.2d 1350, 1354 (11th Cir. 1992). As one district court in this Circuit explained, "the certainty and finality that comes with settlement also weighs in favor of approving a fair and reasonable settlement." *Edwards*, 2016 U.S. Dist. LEXIS 64159 at *10. The proposed settlement ends potentially long and protracted litigation, which serves the public interest. *Wright*, 2018 WL 3966253 at *5; *Kritzer*, 2012 WL 1945144 at *8; and *In re Broadwing*, 252 F.R.D. 369, 376 (S.D. Ohio 2006).

The same is true here. The settlement promotes public interest by providing fair and efficient payments to Collective and Class Members, avoiding the continued expenditure of judicial resources on protracted complex litigation, and eliminating the risks that both parties face through the litigation process. As such, this factor favors final approval.

B. **THE SETTLEMENT DISTRIBUTIONS ARE FAIR, REASONABLE, AND ADEQUATE.**

In evaluating the fairness of a class settlement, a court should also ensure that the distribution of settlement proceeds is equitable. *Kritzer*, 2012 WL 1945144 at *8 (citing *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 855 (1999)). Equity does not dictate that the proceeds must be shared on a pro-rata basis, so long as the ultimate distribution is fair, reasonable, and adequate. *Id*. (internal citations omitted.).

In the present case, as outlined in Plaintiff's Preliminary Approval Motion, this settlement establishes a pool of Settlement funds that will be divided among the Settlement Class members who do not opt out of the settlement on a pro rata basis based upon their calculated damages.[19] This ensures an equitable distribution of settlement proceeds that is directly tied to the claims of and harm allegedly suffered by the settlement class members and will provide them with a proportionate share of the settlement funds.[20]

*(a) The Individual Payments are Reasonable and Adequate.*

With respect to the settlement payments to the Settlement Class members, the individual payments are reasonable.[21] The total Settlement Fund represents approximately 40% of the maximum unliquidated overtime damages calculated by Class Counsel.[22] Defendant disputes the maximum alleged overtime damages calculated by Class Counsel and instead believes that the total settlement fund exceeds the maximum recoverable damages in Litigation.[23] Although 12 of the settlement payments will be less than $5, the remaining 1,038 settlement payments exceed this

---

[19] *See* ECF No. 131, at PAGEID # 3171. *See also* ECF No. 131-2, Declaration of Matthew J.P. Coffman, at PAGEID # 3230-31; ECF No. 131-3, Declaration of Daniel I. Bryant, at PAGEID # 3254-58.
[20] *Id*.
[21] *See* ECF No. 131, at PAGEID # 3171-72.
[22] *Id. See also* ECF No. 131-2, Declaration of Matthew J.P. Coffman, at PAGEID # 3230-31; ECF No. 131-3, Declaration of Daniel I. Bryant, at PAGEID # 3254-58.
[23] *Id*.

amount with the highest payment in excess of $4,300.[24] The Settlement Fund and individual settlement payments represent a reasonable and adequate resolution of the settlement class members' overtime claims.[25]

### (b) Representative Plaintiffs' Service Awards are Reasonable

The Sixth Circuit declared that "numerous courts have authorized incentive awards [as] efficacious ways of encouraging members of a class to become class representatives and rewarding individual efforts taken on behalf of the class." *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003); *accord Osman v. Grube, Inc.*, No. 3:16-cv-00802-JJH, 2018 U.S. Dist. LEXIS 78222, at *4-5 (N.D. Ohio May 4, 2018).; *Wright*, 2018 WL 3966253 at *7. Notably, "courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Wright*, 2018 WL 3966253 at *7 (quoting *Dillworth v. Case Farms Processing, Inc.*, No. 5:08-cv-1694, 2010 WL 776933, at *7 (N.D. Ohio Mar. 8, 2010) (internal quotation marks and citations omitted)). Service awards to representative plaintiffs "are common in class action settlement and routinely approved for the simple reason 'to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation.'" *Kritzer*, 2012 WL 1945144 at *8. As stated in *In re Dunn & Bradstreet Credit Services Customer Litigation*, 130 F.R.D. 366, 373-74 (S.D. Ohio 1990):

> Numerous courts have not hesitated to grant incentive awards to representative plaintiffs who have been able to effect substantial relief for classes they represent. 130 F.R.D. at 373 (citing *Wolfson v. Riley*, 94 F.R.D. 243 (N.D. Ohio 1981); *Bogosian v. Gulf Oil Corp.*, 621 F. Supp. 27, 32 (E.D. Pa. 1985); *In re Minolta Camera Products Antitrust Litigation*, 666 F. Supp. 750, 752 (D. Md. 1987)).

---

[24] *Id.*
[25] *Id.*

In this Circuit, service awards to representative plaintiffs are "typically justified when named plaintiffs expend more time and effort beyond that of other class members in assisting class counsel with litigation, such as by actively reviewing the case and advising counsel in prosecution of case." *In re Southern Ohio Correctional Facility*, 175 F.R.D. 270, 273-76 (S.D. Ohio 1997). Courts recognize that "differentiation among class representatives based upon the role each played may be proper in given circumstances." *Dun & Bradstreet*, 130 F.R.D. at 374, *citing*, *In re Jackson Lockdown/MCO Cases*, 107 F.R.D. 703, 710 (E.D. Mich. 1985), *see also*, *Enterprise Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 250 (S.D. Ohio 1991)(among the factors warranting incentive awards are the "time and effort spent" by the individuals in question and "whether these actions resulted in a substantial benefit to Class Members"). As this Court recently echoed, such awards are common in class action settlement and routinely approved for the simple reason: "to compensate [plaintiffs] for the services they provided and the risks they incurred during the course of the class action litigation." *Kritzer*, 2012 WL 1945144 at *8-9 (S.D. Ohio May 30, 2012).

In the present case, Representative Plaintiffs' roles in the Litigation were crucial and the requested payment amounts are reflective of their respective contributions.[26] Representative Plaintiffs assisted in the Litigation by doing some or all of the following: (1) providing extensive factual information to Plaintiffs' counsel; (2) faithfully communicating with Plaintiffs' counsel; (3) subjecting themselves to the responsibilities of serving as Representative Plaintiffs; (4) responding to written discovery; (5) testifying at hearings; (6) attending the mediation; (7) providing sworn statements; and/or (8) otherwise providing material information to Plaintiffs'

---

[26] *See* ECF No. 131, at PAGEID # 3173.

counsel above and beyond normal course.[27] They also attached their names to publicly filed lawsuits against an employer that dominates where they live, which justifies their service awards. *Osman*, 2018 U.S. Dist. LEXIS 78222, at *5 (citing *Sand v. Greenberg*, 2011 U.S. Dist. LEXIS 155013, 2011 WL 784602, at *3 (S.D.N.Y. Oct. 6, 2011) (approving award in FLSA case because plaintiffs "took risks by putting their names on this lawsuit," including that of "blacklisting"). For their individual efforts, Plaintiffs are requesting service payments as follows: (1) Matthew Godsey: $15,000; (2) Mark Satterly: $12,500; (3) Jasson Dunaway: $10,000; (4) Josh Wagler: $10,000; and (5) Jason Myers: $2,500.[28]

Moreover, as previously presented before the Court, the proposed service payments set forth in the agreement are within the range awarded by district courts in this Circuit and in wage and hour actions in other jurisdictions. *See Al-Sabur, et al. v. ADS Alliance Data Systems, Inc.*, No. 2:18-cv-957, ECF No. 23 (S.D. Ohio Aug. 6, 2019) (Smith, J.) (approving service awards of $12,500 for a representative plaintiff and $2,500 for an Opt-In Plaintiff); *Mullins v. S. Ohio Pizza, Inc.*, No. 1:17-CV-426, 2019 WL 275711, at *6 (S.D. Ohio Jan. 18, 2019) (Dlott, J.) ($10,000 service award for each named plaintiff); *Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-CV-516, 2019 WL 6310376, at *8 (S.D. Ohio Nov. 25, 2019) (Rice, J.) ($10,000 service award for each named plaintiff); *Arledge v. Domino's Pizza, Inc.*, No. 3:16-CV-386-WHR, 2018 WL 5023950, at *6 (S.D. Ohio Oct. 17, 2018) (Rice, J.) ($10,000 service award for each named plaintiff); *Swigart v. Fifth Third Bank*, 2014 WL 3447947 *7 (S.D. Ohio July 11, 2014)(approving "modest class representative award" requests of $10,000 to each of the class representatives in FLSA/Rule 23 hybrid action); *In re Polyurethane Foam Antitrust Litig.*, 135 F. Supp. 3d 679, 694

---

[27] *Id. See* ECF No. 131-2, Declaration of Matthew J.P. Coffman, at PAGEID # 3241-42; ECF No. 131-3, Declaration of Daniel I. Bryant, at PAGEID # 3255.
[28] *Id.*

(N.D. Ohio 2015) (awarding $35,000 service awards); *Johnson v. Midwest Logistics Sys.*, No. 2:11-CV-1061, 2013 U.S. Dist. LEXIS 74201, at *20 (S.D. Ohio May 25, 2013) (awarding $12,500 service award).

As more fully discussed above and in Plaintiffs' Preliminary Approval Motion, the incentive awards to Matthew Godsey, Mark Satterly, Jasson Dunaway, Josh Wagler, and Jason Myers are appropriate in light of their service in the Litigation.

## C. APPROVAL OF THE SETTLEMENT UNDER THE FLSA IS APPROPRIATE

The court presiding over an FLSA action may approve a proposed settlement of the action under Section 16(b) of the FLSA "after scrutinizing the settlement for fairness." *Landsberg v. Acton Enterprises, Inc.*, No. C2-05-500, 2008 WL 2468868, at *1, n.1 (S.D. Ohio June 16, 2008) (quoting *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1353 (11th Cir. 1982)). As a district court in the Sixth Circuit has observed, "[t]he need for the court to ensure that any settlement of [an FLSA] collective action treats the plaintiffs fairly is similar to the need for a court to determine that any class-action settlement is 'fair, reasonable, and adequate.'" *Crawford v. Lexington-Fayette Urban County Gov't*, No. 06-299-JBC, 2008 WL 4724499, at *3 (E.D. Ky. Oct. 23, 2008).

In this case, as previously demonstrated in Plaintiffs' Preliminary Approval Motion, the Settlement was a result of arm's-length negotiations resulting in a reasonable, fair, and adequate resolution for the settlement class members.[29] This Court should approve the proposed Settlement.

## D. PLAINTIFFS' ATTORNEY FEES AND REIMBURSEMENT OF COSTS ARE REASONABLE AND APPROPRIATE FOR FINAL APPROVAL

### 1. The Mandatory Provisions of Attorney Fees and Costs under the FLSA and the Ohio Wage Act.

---

[29] *See* ECF No. 131, at PAGEID # 3175.

The FLSA[30] has a fee-shifting provision which provides that reasonable attorney fees and costs should be awarded to a prevailing party. 29 U.S.C. §216(b). The federal courts have long recognized the profound importance of plaintiffs' right to recover attorney's fees under the FLSA. In *United Slate, Tile and Composition Roofers, Damp and Waterproof Workers Association, Local 307, et al. v. G & M Roofing and Sheet Metal Co., Inc.*, 732 F.2d 495, 501 (6th Cir. 1984), the Court recognized that an award of attorney's fees is mandatory under 29 U.S.C. §216(b). The Court explained, that "the purpose of §216(b) is to insure effective access to the judicial process by providing attorneys for prevailing plaintiffs with wage and hour grievances; [o]bviously Congress intended that the wronged employee should receive his full wages…without incurring any expense for legal fees or costs." *Id.* (quoting *Maddrix v. Dize*, 153 F.2d 274, 275-76 (4th Cir. 1946)). Plaintiffs "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983) (quoting S. Rep. No. 94-1011, at 4 (1976), 1976 U.S.C.C.A.N. at 5912).

The FLSA does not establish what constitutes a reasonable fee; consequently, "[t]he determination of a reasonable fee must be reached through an evaluation of a myriad of factors, all within the knowledge of the trial court, examined in light of the congressional policy underlying the substantive portions of the statute providing for the award of fees." *United Slate, Tile & Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 v. G&M Roofing and Sheet Metal Co.*, 732 F.2d 495, 501 (6th Cir. 1984). That determination is informed by both the purpose and practical operation of the FLSA. "The purpose of the FLSA attorney fees provision is 'to

---

[30] The Ohio Wage Act also provides for the recovery of attorney fees and costs, but the analysis will be limited to the right to attorney fees and costs under the FLSA. The Ohio Wage Act, R.C. § 4111.10(A) states that "Any employer who pays any employee less than wages to which the employee is entitled under section 4111.03" (the overtime provision that states an employer "shall pay an employee for overtime at a rate of one and one-half times the employee's wage rate for hours worked in excess of forty hours in one workweek") allows for the recovery of "costs and reasonable attorney's fees as may be allowed by the court."

insure effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances.'" *Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir. 1994) (quoting *United Slate*, 732 F.2d at 502). The nature of FLSA overtime awards usually focuses the Court on the vindication of statutory rights rather than the amount recovered. "Courts should not place an undue emphasis on the amount of the plaintiff's recovery because an award of attorney fees [in a FLSA case] 'encourage[s] the vindication of congressionally identified policies and rights.'" *Fegley*, 19 F.3d at 1135 (quoting *United Slate,* 732 F.2d at 503). *Accord City of Riverside v. Rivera*, 477 U.S. 561, 574 (1986) ("reject[ed] the proposition that fee awards . . . should necessarily be proportionate to the amount of damages a civil rights plaintiff actually recovers").

As this Court declared, "when awarding attorney's fees in a class action, a court must make sure that counsel is fairly compensated for the amount of work done as well as for the results achieved." *Wright*, 2018 WL 3966253 at *6 (quoting *Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 516 (6th Cir. 1993); *Mitchell*, 2019 WL 696941, at *6 (S.D. Ohio Feb. 20, 2019) (Vascura, M.J.), *report and recommendation adopted*, No. 2:17-cv-717, 2019 WL 1125760 (S.D. Ohio Mar. 12, 2019) (Watson, J.). *See also Connectivity Sys. Inc. v. Nat'l City Bank,* Case No. 2:08-cv-1119, 2011 WL 292008, at *13, 2011 U.S. Dist. LEXIS 7829, at *34 (S.D. Ohio Jan. 26, 2011) (citation omitted) (Watson, J.) ("absent adequate compensation, counsel will not be willing to undertake the risk of common fund class action litigation. Counsel who create a common fund for the benefit of a class are entitled to a payment of fees and expenses from the fund relative to the benefit achieved.") (internal citations omitted). Rule 23 authorizes a court to "award reasonable attorney's fees and non-taxable costs that are authorized by law or by the parties' agreement." *See* Fed. R. Civ. P. 23(h). Plaintiffs' successful pursuit of this action can also support

an award of reasonable attorney's fees. *Wright*, 2018 WL 3966253 at \*6 (citing *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1194 (6th Cir. 1974).

District courts apply a two-part analysis to assess the reasonableness of an attorney fee petition. *Wright*, 2018 WL 3966253 at \*6 (citing *In re Cardinal Health Inc. Sec. Litigs.*, 528 F.Supp.2d 752, 760 (S.D. Ohio Dec. 31, 2007)). First, the Court must determine the appropriate method to calculate the fees, using either the percentage of fund or the Lodestar approach. *Id.* Whichever method is utilized, the United States Court of Appeals for the Sixth Circuit requires "only that awards of attorney's fees by federal courts in common fund cases be reasonable under the circumstances." *Id.* (citing *Rawlings*, 9 F.3d at 516). Second, the Court must consider six factors to assess the reasonableness of the fee. *Id.* (citing *Moulton v. U.S. SteelCorp.*, 581 F.3d 344, 352 (6th Cir. 2009)).

In this case, Plaintiffs respectfully request that the Court apply the percentage of the fund method to cover Plaintiffs' attorney fees and reimbursement of costs for several reasons that follow.

**2. The Court should use the "Percentage of the Fund" approach to calculate a reasonable fee because it is the preferred method in the Southern District of Ohio.**

The United States Supreme Court "has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing C. v. Van Gemert*, 444 U.S. 472, 478 (1980). The Sixth Circuit has approved a court's use of the percentage-of-the-fund method to determine a reasonable attorney's fee from a common fund settlement. *Rawlings v. Prudential Bache Prop., Inc.*, 9 F.3d 513, 515–16 (6th Cir. 1993); *see also Lonardo v. Travelers Indemnity Co.*, 706 F. Supp. 2d 766, 790 (N.D. Ohio 2010) (the percentage-of-the-fund method is the "preferred method for common fund cases, where there is a single pool of money and each class member is entitled to a share"); *Swigart v. Fifth Third Bank*, 2014 WL 3447947 \*5 (S.D. Ohio

July 11, 2014) (adopting the percentage approach as "the most appropriate method for determining reasonable attorneys' fees" in wage and hour cases). "The percentage of the common fund method has the advantage of establishing reasonable expectations on the part of class counsel as to their expected recovery, and encouraging early settlement before substantial fees and expenses have accumulated." *Rotuna v. W. Customer Mgmt. Grp., LLC*, No. 4:09CV1608, 2010 U.S. Dist. LEXIS 58912, at *20 (N.D. Ohio June 15, 2010) (approving fees at one third of common fund). Furthermore, it permits courts to focus on the benefit conferred upon a class or collective rather than the cumbersome task of reviewing complicated and lengthy billing documents. *Rawlings*, 9 F.3d at 516 ("[T]he lodestar method has been criticized for being too time-consuming of scarce judicial resources."). Further, there are good reasons to prefer using the percentage of the fund method. *See In re Cardinal Health Inc. Sec. Litigations*, 528 F. Supp. 2d 752, 761–62 (S.D. Ohio 2007) (providing an excellent discussion on the subject). In these scenarios, As previously observed, there are several good reasons to prefer using the percentage of the fund method. *See In re Cardinal Health*, 528 F.Supp.2d 752, 761-62 (S.D. Ohio 2007). For example, the percentage approach encourages efficiency, judicial economy, and aligns the interests of the lawyers with the class. *Id*. In contrast, the lodestar approach incentivizes attorneys to work more hours, without regard to the quality of the output or the class's needs, the percentage approach instead "rewards counsel for success and penalizes it for failure." *Id*. (internal citations omitted.) The lodestar method also burdens courts "with the tedious task of auditing time records," and is still subject to arbitrariness. *Id*.

In the Sixth Circuit, district courts have the discretion to determine the appropriate method for calculating attorneys' fees in light of the unique characteristics of class actions in general, as well as the particular circumstances of the actual cases pending before the Court, using either the

percentage or lodestar approach. *Dillow v. Home Care Network, Inc.*, No. 1:16-cv-612, 2018 WL 4776977 at *4-5 (S.D. Ohio Oct. 3, 2018) (citing *In re Cardinal Health Inc. Sec. Litigs.*, 528 F.Supp.2d at 761.). In the Southern District of Ohio, this Court declared that the preferred method is "to award a reasonable percentage of the fund, with reference to the lodestar and the resulting multiplier." *Connectivity Sys. Inc. v. Nat'l City Bank,* Case No. 2:08-cv-1119, 2011 WL 292008, at *13, 2011 U.S. Dist. LEXIS 7829, at *34 (S.D. Ohio Jan. 26, 2011) (citation omitted) (Watson, J.). *See also Rikos v. Proctor & Gamble Company*, No. 1:11-cv-226, 2018 WL 2009681, at *8 (S.D. Ohio Apr. 30, 2018); *Kimber Baldwin Designs, LLC v. Silv Commc'n, Inc.*, No. 1:16-cv-448, 2017 WL 5247538, at *5, 2017 U.S. Dist. LEXIS 186830, at *14 (S.D. Ohio Nov. 13, 2017) (Black, J.) ("In the Southern District of Ohio, the preferred method is to award a reasonable percentage of the fund, with reference to the lodestar and the resulting multiplier." (internal citations and quotations omitted)).

In cases that are not precisely a common fund case (as the funds going to pay for attorney fees and costs are to be paid under the settlement agreement separate and apart from the money that goes to the fund to pay the class members), the "common fund analysis properly applies." *Merkner v. AK Steel Corporation*, No. 1:09-cv-423, 2011 WL 13202629, at *1 (S.D. Ohio Jan. 10, 2011). *See also Bailey v. AK Steel Corp.*, No. 1:06-cv-468, 2008 WL 553764, at *1 fn. 2 (S.D. Ohio Feb. 28, 2008). As a result, these factors favor final approval utilizing the common fund approach. *Dillow*, 2018 WL 4776977 at *4-5; *Wright*, 2018 WL 3966253 at *6; and *Connectivity Systems, Inc.*, 2011 WL 292008 at *13.

While district courts may use either percentage of the fund or lodestar method to calculate fee awards, courts in the Southern District of Ohio generally use the percentage of the fund method and concluding that a cross-check[4] is unnecessary. *Rikos*, 2018 WL 2009681, at *8-10 (S.D. Ohio

Apr. 30, 2018) (Black, J.). Indeed, "performing a cross-check of the attorney-fee request using Class Counsel's lodestar is optional." *Feiertag v. DDP Holdings, LLC*, No. 14-cv-2643, 2016 U.S. Dist. LEXIS 122297, at *20-21 (S.D. Ohio Sep. 9, 2016); *Dillow v. Home Care Network, Inc.*, No. 1:16-cv-612, 2018 U.S. Dist. LEXIS 170579, at *16 (S.D. Ohio Oct. 3, 2018) (lodestar cross-check of percentage of the fund fee award is "unnecessary").

### (a) The Fund is $1,200,00.

In order to determine the amount of the "fund" for purposes of gauging a fee award, "courts include all amounts benefitting the class, including those amounts typically born by the class, such as attorneys' fees and notice and administration costs." *Rikos*, 2018 WL 2009681 at *8. That said, the proper measure when analyzing a percentage of the fund award is to take the attorney's fees "as the numerator and the denominator is the total dollar figure of the Total Benefit to the class (which includes the 'benefit to class members,' the attorney's fees and may include costs of administration)." *Rikos*, 2018 WL 2009681 at *8, quoting *Gascho v. Glob Fitness Holdings, LLC*, 822 F.3d 269, 282 (6th Cir. 2016). As outlined in Plaintiffs' Preliminary Approval Motion, Plaintiffs respectfully request an award of one third of this total amount, or $400,000, for their attorneys' fees. Under *Gascho*, the correct measure is:

$$\$1,200,000 \ / \ 3 = \$400,000 \ \text{fee award}$$

Federal jurisprudence within the Sixth Circuit, including this Court, hold that 1/3 of the settlement fund is a "normal fee amount in a wage and hour case." *Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-CV-516, 2019 WL 6310376, at *5 (S.D. Ohio Nov. 25, 2019) (Rice, J.) (approving as reasonable 1/3 for attorney's fees from a common fund of $1,140,000); *Arledge v. Domino's Pizza, Inc.*, No. 3:16-CV-386-WHR, 2018 WL 5023950, at *4 (S.D. Ohio Oct. 17, 2018) (Rice, J.) (observing collective cases that attorney fee awards "typically range from 20 to 50

percent of the common fund"); *Osman*, 2018 U.S. Dist. LEXIS 78222, at *6 (citations omitted) ("one-third of the common fund is a reasonable attorneys' fee award 'and has been approved in similar FLSA collective actions in this judicial district.'"). Indeed, following the common fund approach, this Court recently approved 1/3 of the common fund for the same counsel. *See Al-Sabur, et al. v. ADS Alliance Data Systems, Inc.*, No. 2:18-cv-957, ECF No. 23 (S.D. Ohio Aug. 6, 2019) (Smith, J.) (approving as reasonable 1/3 of the common fund of $525,000 for attorney fees); *Walton, et al. v. Oldcastle BuildingEnvelope, Inc.*, No. 3:18-cv-2936, ECF No. 44 (N.D. Ohio Mar. 2, 2020) (Carr, J.) (approving as reasonable 1/3 of a total common fund of $775,000 for attorney fees); *see also Swigart*, 2014 WL 3447947 *7 ("An award of 33% of the total settlement fund" – before additional payment for expenses – "is well within the range of fees requested in class and collective actions in Ohio federal district courts. [Cit.]; *Kritzer*, 2012 U.S. Dist. LEXIS 74994, 2012 WL 1945144, at *9-10 (awarding attorney's fees and costs up to $235,000 out of a settlement of $455,000 (52% of total recovery) in a hybrid FLSA collective and Ohio class action for unpaid overtime."); *Bessey v. Packerland Plainwell, Inc*. 2007 WL 3173972 (W.D. Mich. 2007) (approving a one-third attorneys' fee award in an FLSA settlement); *Rotuna v. W. Customer Mgmt. Grp., LLC*, No. 4:09-CV-1608, 2010 U.S. Dist. LEXIS 58912, 2010 WL 2490989, at *7 (N.D. Ohio June 15, 2010) (approving one-third of the common fund as attorneys' fees). *Accord Dillworth v. Case Farms Processing, Inc*., 5:08CV1694, 2009 U.S. Dist. LEXIS 76947 (N.D. Ohio 2009); *Jackson v. Papa John's,* Case No. 1:08-CV-2791, 2008 U.S. Dist. LEXIS 107650 (N.D. Ohio 2008); *Fincham v. Nestle Prepared Foods Co*., 1:08-CV-73 (N.D. Ohio 2008); *McGhee v. Allied Waste Indus.,* Case No. 1:07-CV-1110 (N.D. Ohio 2007)); *In re Revco Securities Litigation*, Fed. Sec. L. Rptr. ¶ 96,956, at 94,069 (N.D. Ohio 1993); *Hebert v. Chesapeake Operating, Inc.*,

2019 WL 4574509, Case No. 2:17-cv-852, *8 (S.D. Ohio Sept. 20, 2019) ("33% is typical for attorney's fees in common fund, FLSA collective actions in this District…").[31]

In this case, the parties agreed through the Settlement Agreement that out of the total Settlement Fund of $1,200,000, the parties' settlement agreement provides that it shall pay (a) all of the Individual Payments to Class Members; (b) Class Representatives' Service Awards; (c) Class Counsel's attorneys' fees and expenses; and (d) the costs associated with the Third-Party Administrator.[32] As outlined in Plaintiffs' Preliminary Approval Motion and in the Settlement Agreement, Plaintiffs are requesting 1/3 of the common fund, or $400,000 in attorney's fees, and $14,628.00 in costs/expenses for a total Class Counsel Award of $414,628.00.[33] Under *Gascho*,

---

[31] *See also Lackie v. U.S. Well Servs.,* No. 2:15-cv-695, 2017 U.S. Dist. LEXIS 28920, at *10 (S.D. Ohio Mar. 1, 2017); *adopted and affirmed Lackie v. U.S. Well Servs.*, No. 2:15-cv-695, 2017 U.S. Dist. LEXIS 34720 (S.D. Ohio Mar. 10, 2017) (J. Smith) (*see also* Southern District of Ohio, Case No. 2:15-CV-00695, Dkt. Entry 108)*; Perry v. DASCO Home Medical Equipment, Inc*., Southern District of Ohio, Case No. 2:19-cv-01921; Dkt. Nos. 10 and 11 (J. Marbley); *Campbell v. Wise Medical Staffing, Inc.,* Southern District of Ohio, Case No. 2:18-cv-00493; Dkt. Nos. 54-56 (J. Morrison); *Green, et. al. v. H.A.D., Inc.*, Southern District of Ohio, Case No. 2:15-cv-933 (1/3 fee approved in case where parties agreed to early mediation without motion practice and formal discovery); *Braucher, et. al. v. Atlas Railroad Construction, LLC.*, Northern District of Ohio Case No. 5:14-cv-01601 (1/3 fee approved in case where parties agreed to early mediation without motion practice and formal discovery); *Mulloy, et. al. v. Cuyahoga County*, Northern District of Ohio, Case No. 1:14-cv-02546 (same); *Terry v. All Hearts Home Health Care,* Northern District of Ohio Case No. 1:16-cv-515; *Houston, et. al. v. Progressive Casualty Insurance Co.,* Northern District of Ohio Case No. 1:15-cv-01853; *Rucker v. Quality Blow Molding,* Northern District of Ohio Case No. 1:15-cv-1039; *Douglas, et. al. v. J&K Subway, Inc.,* Northern District of Ohio Case No. 4:14-cv-2621; *Smith v. CMHA,* Northern District of Ohio Case No. 1:14-cv-1409; *Armbruster v. City of Cleveland*, Northern District of Ohio Case No. 1:13-cv-2626; *Williams v. Beckett Air, Inc.*, Northern District of Ohio Case No. 1:12-cv-2796; *Welch v. Incept Corporation*, Northern District of Ohio Case No. 5:12-cv-1775; *Malaj v. Gohlke*, Northern District of Ohio Case No. 1:11-cv-1578; *Campbell v. Judson Services*, Northern District of Ohio, Case No. 1:11-cv-906; *Murphy v. 1-800-Flowers*, Northern District of Ohio, Case No. 1:10-cv-1822; *Miller v. National Enterprise Systems*, Northern District of Ohio, Case No. 1:10-cv-1664; *Osolin v. Turocy & Watson LLP, et al,* Northern District of Ohio, Case No. 1:09-cv-2935; *Kelly v. National Enterprise Systems*, Northern District of Ohio, Case No. 1:09-cv-2268; *McNelley v. Aldi,* Northern District of Ohio, Case No. 1:09-cv-1868; *Rotuna v. West Customer Management Group,* Northern District of Ohio, Case No. 4:09-cv-1608; *Jackson v. Papa John's*, Northern District of Ohio, Case No. 1:08-cv-2791; *Dillworth v. Case Farms*, Northern District of Ohio, Case No. 5:08-cv-1694; and *Fincham v. Nestlé Prepared Foods Company*, Northern District of Ohio, Case No. 1:08-cv-73.
[32] *See* Settlement Agreement, ECF No. 131-1, at PAGEID # 3188-89.
[33] *Id*., at PAGEID # 3189 ("Conditioned on final Court approval of all terms and conditions of this Settlement Agreement and dismissal of the Litigation with prejudice, $414,628.00 of the Settlement Fund

the correct measure is: $400,000 / $1,200,000 = 33.3% fee award. As noted above, a 33.3% award for attorney fees is well within the range courts in this district (and others) have found to be reasonable. *See Rikos*, 2018 WL 2009681 at *9.

Consequently, for the reasons set forth herein as well as those enumerated in Plaintiffs' Preliminary Approval Motion, Plaintiffs respectfully request that this Court grant Class Counsel the requested attorney's fees and costs/expenses. ECF No. 131 at PAGEID # 3176-3182.

## IV.    **CONCLUSION**

For the reasons set forth above, the Parties respectfully request that the Court enter an Order as follows:

1.    Granting certification pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3) of a settlement class as defined in the accompanying memorandum between February 1, 2016 and January 1, 2020 except for the one individual who elected to opt out of the settlement class;

2.    Approving the settlement as fair, reasonable, and adequate under 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23(e);

3.    Approving the Settlement Agreement and that it be implemented according to its terms and conditions as set forth in the Settlement Agreement;

4.    Granting Class Counsel their requested attorney fees, expenses, and costs; and

5.    Dismissing this action on the merits with prejudice.

Respectfully Submitted,

**COFFMAN LEGAL, LLC**                    DINSMORE & SHOHL, LLP

*/s/ Matthew J.P. Coffman*                    */s/ Karen S. Hockstad*
Matthew J.P. Coffman (0085586)        Karen S. Hockstad (0061308)

---

will be paid to Class Counsel for attorneys' fees and expenses ($400,000 in fees and $14,628.00 in expenses) incurred in the Litigation ("Class Counsel Award")).

1550 Old Henderson Road
Suite 126
Columbus, Ohio 43220
Phone: 614-949-1181
Fax: 614-386-9964
Email: mcoffman@mcoffmanlegal.com

**BRYANT LEGAL, LLC**

*/s/ Daniel I. Bryant*
Daniel I. Bryant (0090859)
1550 Old Henderson Road
Suite 126
Columbus, Ohio 43220
Phone: 614-704-0546
Fax: 614-573-9826
Email: dbryant@bryantlegalllc.com

*Attorneys for Named Plaintiffs and those*
*similarly situated*

Glen R. McMurry (0082600)
Andrew S. Good (008653)
karen.hockstad@dinsmore.com
glen.mcmurry@dinsmore.com
andrew.good@dinsmore.com
191 W. Nationwide Blvd., Suite 300
Columbus, Ohio 43215
P. 614.628.6880
F. 614.628.6890

*Attorneys for Defendant Airstream, Inc.*

## CERTIFICATE OF SERVICE

It is hereby certified that the foregoing has been filed via the electronic filing system on

September 17, 2020.  Notice of filing will be performed by the Court's electronic filing system,

and Parties may access the document through the electronic filing system.

*/s/ Matthew J.P. Coffman*
Matthew J.P. Coffman